CRAFT and another *against* ISHAM.

In *April*, 1832, *B* gave *A* a writing in these terms: " Understanding from *T.*, that he has some proposals from you to assist him in his business, if he could procure some friend to become responsible for a part of what should be advanced, (say 1000 dollars) at the end of three years, I take this opportunity to thank you for these friendly offers to *T.*, and I will willingly hold myself responsible to you for the above amount, provided *T.* should fail to pay at the end of said term of three years." *T.* was the son-in-law of *B*; and *B*, in going from his dwelling-house to his office, daily passed the store of *T.*, and occasionally purchased goods there. *A* furnished goods to *T.*, to assist him in his business, to the amount of between 900 and 1000 dollars, at different times between the 24th of *April*, and the 10th of *November*, 1832, on a credit of four months; the credit on the last parcel expiring on the 10th of *March*, 1833. In *November*, 1834, *T.* became insolvent, and has never paid for the goods. No notice was, at any time, given to *B* of the acceptance of the guaranty by *A*; nor was any notice given to *B* of the amount of the debt due from *T.* for the goods, until *November*, 1835. In an action brought by *A* against *B*, on the guaranty, it was held, 1. that the defendant was entitled to notice, within a reasonable time, of the acceptance of the guaranty by the plaintiff, and of the amount of goods furnished under it; 2. that the notice given in this case was not within a reasonable time; 3. that this was a question of law, not necessary or proper to be submitted to the jury; consequently, that the defendant was entitled to a verdict.

THIS was an action of *assumpsit*, founded on a written guaranty signed by the defendant. The declaration contained three counts; in the first and third of which the guaranty was recited.

The cause was tried at *Norwich, March* term, 1838, before *Huntington*, J.

On the trial, the plaintiffs abandoned the second count. In support of the first and third counts, the plaintiffs produced and read in evidence a writing in these terms :

" *New-London, April* 14th, 1832.

Messrs. *W. E. & J. F. Craft :*

Gentlemen, understanding from Mr. *J. B. Turner*, that he has some proposals from your Mr. *J. F. Craft* to assist him in his business, if he could procure some friend to become responsible for a part of what should be advanced, (say one thousand dollars) at the end of three years, I take this opportunity to thank you for these friendly offers to Mr. *T.*, and I will willingly hold myself responsible to you for the above amount, provi-

ded Mr. *T.* should fail to pay, at the end of said term of three years. Most respectfully,

New-London, July, 1838.

Craft
*v.*
Isham.

Your friend and humble servant,

[Signed] *Jirah Isham."*

The execution of this writing being admitted, the plaintiffs introduced testimony to prove, that on the faith of it, they sold and delivered goods to *Turner*, to assist him in his business, to the amount of between nine and ten hundred dollars, at different times, between the 24th of *April,* and the 10th of *November,* 1832; and that the principal part of these goods remains unpaid for.

*Turner* was the son-in-law of the defendant ; and was unable to obtain goods sufficient to carry on his business, on his own credit and from his own resources. After the guaranty was given he conducted a small grocery business in a store occupied by and under the sign of a relative. This store was on the opposite corner of the street from the dwelling-house in which the defendant resided ; and the defendant in going to and returning from his office to his house, generally passed by or near that store. He also purchased goods there occasionally. In *November*, 1834, *Turner* left *New-London,* insolvent ; and has not returned. The goods furnished by the plaintiffs to *Turner*, were sold on a credit of four months from the time of sale. The last parcel was sold in *November*, 1832 ; and the credit on that parcel expired on the 10th of *March*, 1833.

No notice was given to the defendant of the acceptance of the guaranty by the plaintiffs, at any time before the commencement of the suit ; nor was any notice given to the defendant of the amount of the plaintiffs' debt for the goods, until some time in *November*, 1835 ; nor was there any proof that the defendant had any knowledge that the plaintiffs had accepted the guaranty and furnished the goods on the faith of it, unless such knowledge may be inferred from the other facts in the case ; nor was there any proof, that the plaintiffs had, at any time, demanded payment of the goods, or any part of them, of *Turner.*

The judge was of opinion and instructed the jury, that under the guaranty, the defendant was entitled, within a reasonable time after the credit on all the goods furnished to *Turner* had expired, to notice of the amount of the debt for the goods so furnished, for which he was held responsible under the guaran-

*New-London,*
*July, 1838.*
———————
Craft
*v.*
Isham.

ty ; and that upon the facts proved and admitted in the case, the notice was not within a reasonable time ; and therefore, the defendant was entitled to a verdict.

The jury returned a verdict for the defendant accordingly ; and the plaintiffs moved for a new trial for a mis-direction.

*Goddard* and *Brainard,* in support of the motion, contended, 1. That notice of the amount of the debt, within a reasonable time, as required by the charge, was not necessary in this case. Contracts of this nature admit of every variety of form ; and the obligation of the parties in each case depends upon the terms made use of. By the terms of this contract, no such notice as that mentioned in the charge was necessary. The defendant made himself liable, to the amount of 1000 dollars, during the whole period of three years. There was no resting-place, where the plaintiffs were to stop and give notice ; for there might be further dealings—payments and new purchases. The guarantor had nothing to do with the dealings between the parties within the limitations of the guaranty. This is not a conditional engagement or proposition to give a guaranty, such as there was in the cases of *Stafford* & al. v. *Low,* 16 *Johns. Rep.* 67., and *Beekman* v. *Hale,* 17 *Johns. Rep.* 134 ; but it was *ab origine* an absolute guaranty. The bargain was completed ; and nothing but the delivery of the goods remained to be done. No notice was necessary, except the usual notice previous to the bringing of the suit. *Hargreave* v. *Snee,* 6 *Bing.* 244. *Atkinson* v. *Carter,* 2 *Chitt. Rep.* 402. *Breed* v. *Hillhouse,* 7 *Conn. Rep.* 523. *Williams* v. *Granger,* 4 *Day,* 444. 1 *Sw. Dig.* 697. *Lawes on Plead.* 212. 216. 223. 2 *Saund. Pl. & Ev.* 52, 3. *Mason* v. *Pritchard,* 12 *East,* 227. S. C. at *N. P.* 2 *Campb.* 436. *Merle* & al. v. *Wells,* 2 *Campb.* 413. In all the cases where notice has been required, it has arisen from the terms of the contract, or the circumstances of the case. [Here the counsel adverted to most of the cases relied on by the defendant.] The principles governing one special contract, should be applied with great caution to a different special contract. A decision upon one is not, of course, an authority for another. The defendant was the occasion of the goods being furnished. Upon equitable principles, therefore, he ought to bear the loss rather than the plaintiffs.

New-London,
July, 1838.
———
Craft
v.
Isham.

2. That what is reasonable notice in cases of guaranty is a question of *fact*, necessarily varying with the circumstances of the case, and should, therefore, be submitted to the jury. Here, the judge took that question from the jury.

*Strong* and *Child*, contra, contended, 1. That the defendant was entitled to notice within a reasonable time, that the plaintiffs had *accepted* the guaranty and acted under· it. They were to exercise their judgment upon the responsibility of the defendant. He could not know, without notice, that his guaranty would be satisfactory to the plaintiffs ; and from their silence he had a right to infer that it was not. *Douglass* & al. v. *Reynolds* & al. 7 *Pet.* 113. 125, 6. *Lee* v. *Dick*, 10 *Pet.* 482. 495. *Norton* & al. v. *Eastman*, 4 *Greenl.* 521. *Beekman* v. *Hale*, 17 *Johns. Rep.* 134.

2. That the defendant was also entitled, within a reasonable time, to notice of the *amount* of goods furnished on the credit of the guaranty. The defendant proposed to be responsible for "*a part*" of the goods furnished to *Turner*. The plaintiffs were to furnish a part on *Turner's* own credit. Without notice the defendant could not know the *extent* of his liability. *That* was a matter exclusively within the knowledge of the plaintiffs and *Turner*. *Russel* v. *Clark's* exrs., 7 *Cranch* 69. 92. *Edmonstone* v. *Drake* & al. 5 *Pet.* 624. 637. *Cremer* v. *Higginson*, 1 *Mason*, 323. 340. *Babcock* & al. v. *Bryant*, 12 *Pick.* 133. 135. *Rapelye* v. *Bailey*, 3 *Conn. Rep.* 438. *Norton* & al. v. *Eastman*, 4 *Greenl.* 521.

3. That there must have been a demand of payment made upon *Turner*, and notice of non-payment given to the defendant. A guarantor is entitled to have due diligence used to obtain payment of the principal debtor ; and he is entitled to notice, that he may see that such diligence is used, or that he may get security from the debtor.

4. That what is reasonable notice, upon a given state of facts, is a question of *law*. But if otherwise, if the judge decided the question right, a new trial will not be granted.

BISSELL, J. The case depends on the propriety of the direction of the judge to the jury. It has been elaborately discussed before us, and now remains for our decision.

It may here be remarked, that the judge did not place the

case on the ground, that no notice of the acceptance of the guaranty was given to the defendant, but on the single ground that he was not notified within a reasonable time, of the advances made under the guaranty, and for which he was held to be liable. It being, however, admitted, that the defendant was not notified of the acceptance of the guaranty, if, in point of law, he was entitled to this notice, or to notice of the advances made, a new trial cannot be granted.

The questions involved in the case are deeply interesting to the mercantile community; and we have attentively considered them, as well in relation to the authorities, as to the principles on which they rest.

And in the first place, *on principle,* we think the defendant was entitled to the notice on which he insists; and that the rule laid down, by the judge on the circuit, is founded in the highest justice and equity.

It is an elementary principle, that when the existence of a material fact, is more peculiarly within the knowledge of the plaintiff than of the defendant, notice of that fact must be averred and proved; and we can see no reason why the rule should not be applied to this case. On the contrary, we think that both the analogies of the law, and the principles of justice demand its application. There is an obvious and striking resemblance between this case, and that class of cases, where the rule in regard to notice is imperative.

We do not mean to say, that the party here is to be held to all that strictness which prevails, and is enforced, in the case of bills of exchange and promissory notes; or that a person giving a letter of guaranty stands on the same ground as the indorser of a note or bill. But, as we have said, there is a resemblance between them. In both cases, the undertaking of the person sought to be charged, is collateral. In both, the facts, which go to create his liability, are known by the other party, but are not known to him. And we can see no reason, why strict notice should be required in the one case, and reasonable notice be dispensed with in the other. We think, in the language of Ch. J. *Marshall,* (*Edmonstone* v. *Drake* and *Mitchell,* 5 *Pet.* 624.) that " it would be an extraordinary departure from that exactness and precision, which peculiarly distinguish mercantile transactions, which is an important principle in the law and usage of merchants, if a merchant

should act on a letter of this character, and held the writer responsible without giving him notice that he had acted on it."

And not only is this notice essential to that exactness and precision, as well as to the good faith and confidence, which should characterize mercantile contracts; but it is equally demanded by a regard to the rights and interests of the defendant; and the most unjust results would follow were a contrary doctrine to prevail. He ought to have the notice, to enable him to take such prudential measures as would guard him against eventual loss; to exercise a watchful supervision over the proceedings of him, for whom he became responsible; to make payments, if necessary, and to secure himself by suit. And this is still more important in the case of a continuing guaranty, like the present, in order that the party to be affected may either withdraw or modify the guaranty, as a regard to his own interests may dictate.

We cannot know before-hand whether his offer of guaranty will be accepted, and if accepted, to what extent, within certain limits, he is to be held ultimately liable. He ought, therefore, to have reasonable notice, in order to charge him. In the absence of all notice, he " would have a right," in the language of *Spencer,* J. (*Beekman* v. *Hale,* 17 *Johns. Rep.* 134.) "to believe that his offer had not been accepted. He would be completely thrown off his guard; and at a distant period, when an insolvency of the principal debtor had intervened, and all hopes of indemnity were gone, he would find himself unexpectedly called on to pay a debt, which he never knew that he was liable for. *Good faith, and the very nature of the negociation, alike require it of the party acting on and accepting a proffered guaranty, to apprise the other party of what is done, and what he is liable for."*

This principle, so reasonable in itself, so consonant to the claims of justice and equity, and imposing no hardship on the person accepting the guaranty, is, we think, fully sustained by the authorities.

It is, however, due to the counsel for the plaintiffs, that we notice the cases relied upon by them, and which are supposed to conflict with the principle advanced in the charge. Several adjudications, both in *England* and in this state, have been urged upon us. And in regard to a portion of them, it need only be remarked, that they have no application to the case be-

*New-London,*
*July, 1838.*

Craft
*v.*
Isham.

fore the court.  Thus, in the cases of *Merle* v. *Wells*, 2 *Campb.* 413., *Mason* v. *Pritchard*, 12 *East*, 227., and *Hall* v. *Rand*, 8 *Conn. Rep.* 576., the present question was neither discussed nor decided.  Each of these cases turned, entirely, upon the character of the guaranty ; whether it were a continuing or a limited one.

So also the cases of *Williams* v. *Granger*, 4 *Day*, 444. and *Breed* v. *Hillhouse*, 7 *Conn. Rep.* 523., are clearly distinguishable from the present.  In each of these, there was an express and unconditional guaranty of a note of hand.  The sums for which these respective guarantors became responsible, were ascertained ; and equally within the knowledge of both parties.  No future executory act remained to be done.  In each, the undertaking of the defendant was absolute, that the note should be paid within the time limited ; and it was correctly held, that no notice was necessary.

But this is not the case of the guaranty of a specific sum already agreed upon ; not of a debt already created ; but of an undertaking to pay, not exceeding a given amount, and which was, of course, uncertain, and depending on some future and executory act, in which the defendant had no participation.

It will, therefore, be readily perceived, that the principle, which governed those cases, has, here, no application.  The only case, in our own court, which has a direct bearing upon the present, is that of *Rapelye* v. *Bailey*, 3 *Conn. Rep.* 438., and 5 *Conn. Rep.* 149. ; and that case so far from affording any support to the claims of the plaintiffs, is, as will be shown in a subsequent part of the argument, entirely opposed to them. The same remark may be, here, made in regard to the decisions which have been had in the *United States* courts, and in the courts of the several states.  We know of no one, and our researches have enabled us to find none, unless it be the case of *Clark* & al. v. *Burdett*, decided by the superior court of the city of *New-York*, 2 *Hall's S. C. Rep.* 197., where notice, upon a state of facts like those now before us, has been held to be unnecessary.  But the cases in which the opposite doctrine has been held, are numerous, and will hereafter be considered.

We are very well aware, that in the *English* cases upon this subject, some *dicta* are to be found, which seem to advance the opinion that the notice now in question need not be given. But we know of no case in which the point has been so adjud-

ged, unless it be, in that of *Goring* v. *Edmonds*, 6 *Bing.* 94. That was not, however, the case of a letter of credit. But the defendant's son had entered into a written agreement, to take of the plaintiff a quantity of timber, at a stipulated price *per* load, and to pay for the same, the one half at *Michaelmas,* and the other half at *Christmas* then next, at farthest. At the foot of the agreement, the following engagement was written, and signed by the defendant : " In the event of my son *Thomas Edmonds,* junr. not paying *Charles Goring,* Esq., I hold myself liable, and hereby engage to fulfil the said payments, according to the above conditions." After a lapse of two years, and after repeated applications had been made to the son, and he had become a bankrupt ; the defendant was applied to, for the first time ; who then admitted his liability ; and it was held, that the defendant was not discharged, by the time that had elapsed, nor by want of notice of the applications made to his son. In regard to this case, it may be remarked, that the undertaking would seem to bear a much stronger resemblance to the guaranty of a debt already contracted, and where the terms of payment were already settled, than to a case where the extent of the liability, and indeed the question whether there shall be any liability, depends upon some future contingency. And it should further be observed, that the defendant, when applied to, admitted his liability ; and that was one ground on which the case was put to the jury, at *nisi prius.* Upon the whole, it may well be doubted, whether, under all the circumstances, this case is an authority for the plaintiffs ; and if it were, we might well hesitate to follow it ; as no authorities are cited in its support ; and it would directly conflict with the whole current of *American* decisions, on this subject.

These decisions settle the point under discussion, beyond all possibility of doubt.

The earliest case in the supreme court of the *United States,* is that of *Russell* v. *Clark's* executors, 7 *Cranch,* 69. It is true, that it was held in that case, that the letters relied on, did not amount to a contract of guaranty. But in pronouncing the opinion of the court, *Marshall,* C. J. says : " Had it been such a contract, it certainly would have been the duty of the plaintiff to have given immediate notice to the defendant, of the extent of his engagement."

New-London,
July, 1838.

Craft
v.
Isham.

In *Cremer* v. *Higginson*, 1 *Mason*, 323. the question now under consideration came directly before the court for decision ; and it was held, that if upon a letter of guaranty, addressed to a particular person, advances are made, upon the faith of the guaranty, it is the duty of the person making the advances, to give notice, within a reasonable time, to the guarantor, of the amount of the advances, and that reliance was placed on the guaranty to ensure the payment ; otherwise the guarantor is discharged from all responsibility.

The same principle is asserted in the case of *Edmondstone* v. *Drake* & *Mitchell*, 5 *Pet.* 624.    The case has been already cited, and we have quoted from the opinion pronounced by Ch. J. *Marshall*.

In *Douglass* v. *Reynolds*, 7 *Pet.* 113. the letter of guaranty, and upon which the advances were made, was very similar in its terms, to the one now before us.   This was held to be a continuing guaranty, contemplating a succession of advances, from time to time.    And it was also held, that the party giving such a guaranty has a right to know, whether it is accepted or not ; and whether the person, to whom it is addressed, means to give credit on the footing of it.   " It may" (says *Story*, J.) " be most material, not only as to his responsibility, but as to future rights and proceedings.   It may regulate, in a great measure, his course of conduct, and his exercise of vigilance, in regard to the party, in whose service it is given. Especially, it is important in the case of a continuing guaranty ; since it may guide his judgment in recalling or suspending it."

It was contended, in that case, that to entitle the plaintiffs to recover on the guaranty, they must have proved, that they gave notice to the defendants of the amount and extent of the advances, as they were made from time to time.   In regard to this claim the court say :  " If this had been the case of a guaranty limited to a single transaction, there is no doubt that it would have been the duty of the plaintiffs to have given notice of the advances, acceptances or indorsements, within a reasonable time after they were made.    But this being a continuing guaranty, in which the parties contemplated a series of transactions, and as soon as the defendants had *received notice of the acceptance*, they must necessarily have understood, that there would be successive advances, acceptances and indorsements, which would be renewed and discharged, from time to time, we cannot perceive any ground, either in principle or pol-

icy, upon which to rest the doctrine, that notice of each successive transaction, as it arose, should be given. *All* that could be required would be, that when all the transactions between the plaintiffs and *Haring* under the guaranty, were closed, notice of the amount for which the guarantors were held responsible, should, *within a reasonable* time, be communicated to them. And if the instructions had asked nothing more than this, we are of opinion, upon principle, as well as upon the authority of *Russell* v. *Clark's* executors, and *Edmondstone* v. *Drake* & al., that it ought to have been given." The court further say : " By the very terms of this guaranty, as well as by the general principles of law, the guarantors are only collaterably liable, upon the failure of the principal debtor to pay the debt. A demand upon him, and a failure on his part to perform his engagements, are indispensable to constitute a *casus foederis.* The creditors are not indeed bound to institute any legal proceedings against the debtor ; but they are required to use reasonable diligence, to make demand, and to give notice of non-payment. The guarantors are not to be held to any length or indulgence of credit, which the creditor may choose ; but have a right to insist, that the risk of their responsibility shall be fixed and determined, within a reasonable time after the debt has become due."

In the still more recent case of *Lee* v. *Dick*, 10 *Pet.* 482., the principles of the case of *Douglass* v. *Reynolds* are repeated and confirmed. It is there again decided, that the guarantor has a right to know whether his guaranty has been accepted and acted upon. And the distinction, already noticed, between the guaranty of a debt already contracted, and a guaranty that is prospective, and intended to attach on future transactions, is fully recognized and established.

" It is to be observed," (say the court) " that this guaranty was prospective. It looked to a draft thereafter to be drawn ; and this question is put at rest, by the decisions of this court. We do not mean to lay down any rule with respect to the time within which notice must be given. The same strictness of proof is not necessary to charge a party upon his guaranty, as would be necessary to support an action upon the bill itself. There are many cases where the guaranty is of a specific existing demand, by a promissory note or other evidence of a debt ; and such guaranty is given upon the note itself, or with refer-

ence to it, and in recognition of it ; when no notice would be necessary. The guarantor, in such cases, knows precisely what he guaranties, and the extent of his responsibility ; and further notice to him would be useless. But when the guaranty is prospective, and to attach upon future transactions ; and the guarantor is uninformed, whether his guaranty has been accepted and acted upon or not, the fitness and justice of the rule requiring notice, is supported by considerations that are unanswerable." This language of the supreme court of the *United States,* is so apposite to the case before us, and so entirely covers the whole ground of controversy, that no apology can be necessary for the length of the preceding quotations.

Since the argument of this case, the cases of *Adams* v. *Jones,* 12 *Pet.* 207., and *Reynolds* & al. v. *Douglass* & al. 12 *Pet.* 497., have fallen under our notice. In the former, it was held, that upon a letter of guaranty addressed to a particular person, or to persons generally, for a future credit to be given to the person in whose favour the guaranty is drawn, notice is necessary to be given to the guarantor, that the person giving the credit has accepted or acted upon the guaranty, and given the credit on the faith of it. In the latter case, the same doctrine is held ; and the question is treated as being no longer an open one in the supreme court of the *United States.*

We have thus reviewed, with some minuteness, the decisions of the highest court in this nation, upon this important and highly interesting subject. And although these decisions are not absolutely imperative upon us, as are the decisions of that court on questions of constitutional law ; yet they are justly entitled to the highest consideration and respect, not only from a regard to the character of the tribunal from which they emanate, but also on account of their important bearing upon the commercial community. This is a mercantile contract, and one in which the mercantile community has a deep interest ; and no one can fail to see how vitally important it is, to such a community, that there should be some uniformity of decision between the *United States* courts, and the courts of the respective states, on questions of mercantile law, and mercantile usages.

Had the plaintiffs here, as they might have done, brought their action to the circuit court of the *United States,* they must, upon the admitted facts in the case, have failed to recover.

Ought we, then, to sanction a recovery? And ought we to *New-London,* July, 1838. differ from that court, in the construction of a mercantile in- Craft *v.* Isham. strument? It is believed that in so doing we should introduce a confusion, in the mercantile community, which nothing but a strict regard to principle could justify.

Were, indeed, the decisions we have been considering, inconsistent with the great principles of equity and justice; were they opposed to the uniform course of adjudication in *England* and in our sister states; we might feel at liberty to disregard them. We should not, in such case, be the authors of the confusion; and even confusion might be preferable to uniformity in injustice and wrong. But we have already examined this case on the ground of principle; and we have more than intimated, that in our judgment, these decisions of the supreme court are rested on the highest ground of justice and equity. And so far from being opposed to, or unsupported by, authorities, they are founded on principles which have long since been settled, and are familiar in *Westminster-Hall.* We barely refer to the authorities. *Chitt. Cont.* 205. n. 1. 2 *Stark. Ev.* 649. and note. *Mac Iver & al. v. Richardson,* 1 *Mau. & Selw.* 557. *Gaunt v. Hill,* 1 *Stark. Ca.* 10. *Symmons v. Want,* 2 *Stark. Ca.* 371. *Payne & al. v. Ives & al.* 3 *Dowl. & Ryl.* 664. *Glyn & al. v. Hertel,* 8 *Taun.* 208. *Bacon v. Chesney,* 1 *Stark Ca.* 192. *Combe v. Woolf,* 8 *Bing.* 156. *Phillips v. Astling & al.* 2 *Taun.* 206. *Morris & al. v. Cleasby,* 4 *Mau. & Selw.* 566. 2 *Saund. Pl. & Ev.* 60.

It only remains that we see how far this doctrine, advanced by the supreme court of the *United States,* has received the sanction of our state courts.

In the state of *Maine,* the point now under discussion has been repeatedly decided. Thus, in the case of *Norton & al. v. Eastman,* 4 *Greenl.* 521., and where the terms of the letter of guaranty were precisely like the present, it was ruled, that where a letter of credit is given for a debt about to be created, and uncertain in its amount, so that the party cannot know beforehand, whether he is to be ultimately liable, nor to what amount, it is necessary, in order to charge him, that he should have notice, in a reasonable time, that the guaranty is accepted, and of the amount of debt under it.

*Tuckerman v. French,* 7 *Greenl.* 117., was also the case

*New-London,*
*July, 1838.*

Craft
*v.*
Isham.

of a continuing guaranty; and it was decided, that notice of its acceptance was indispensable; and also, that when all the transactions under it were closed, notice of the amount for which the guarantors were responsible, should, *in a reasonable time afterwards,* be communicated to them.

In *Massachusetts,* also, this point may be considered as settled.

The leading case on the subject is that of *Babcock* v. *Bryant,* 12 *Pick.* 134. There the defendant agreed, in writing, to be responsible, and pay to the plaintiff, for whatever goods had been, or might be delivered to *C,* within one year; and it was held, that the defendant was not liable, until after reasonable notice of the amount of goods delivered, and a request to pay for them. *Putnam,* J., in pronouncing the opinion of the court, remarks: "The guaranty was of a debt, thereafter to be created. It was of a collateral matter, and not of the mere debt of the defendant. We had no means, or certainly not so good means as the plaintiff had, of knowing the quantity of goods, and the value of the same, that the plaintiff should deliver to *C.*" He then cites, with approbation, the case of *Norton* v. *Eastman,* and sanctions the doctrine there laid down. See also *Sturges* & al. v. *Robins,* 7 *Mass. Rep.* 301. *Duval* v. *Trask,* 12 *Mass. Rep.* 154. *Oxford Bank* v. *Haynes,* 8 *Pick.* 423. *Sylvester* v. *Crapo,* 15 *Pick.* 92.

The same doctrine is also held in the states of *New-York* and *South Carolina. Bennett* v. *Hale,* 17 *Johns. Rep.* 134. *Stafford* v. *Low,* 16 *Johns. Rep.* 67. *Allen* v. *Rightmere,* 20 *Johns. Rep.* 365. 1 *Bailey's S. Car. Rep.* 20.

Such is the support which the decisions of the supreme court has received from adjudications in our sister states; and we are unable to find, in the whole course of *American* jurisprudence, a single case where a contrary doctrine has been maintained, except the case of *Clark* v. *Burdett,* already cited.

We have adverted to the case of *Rapelye* v. *Bailey,* determined in this court; and if that case be truly reported, the precise point now in controversy, was made and decided. There, the terms of the guaranty were not materially different from the present; and according to the marginal note of the case, it was held, that the undertaking of the guarantor was conditional; and that he was entitled to notice of the acceptance of his proposition, of the amount of goods furnished, and

of the time and terms of payment, agreed on, before he could be subjected on this guaranty. And it need hardly be said, that the note of the reporter is fully borne out, by the claims put forth by the counsel, as well as by the language of the judge who gave the opinion of the court. It is true, there were other points in the case; and it is also true, that on a second trial, upon an amended declaration, the question now before us was not raised; but for what reason, we have no means of determining. We do not feel at liberty to disregard the case, as an authority; and we surely have no disposition either to overrule the decision, or to impair its force.

It has been contended, although the point has not been much insisted on, that the facts, which the judge who tried the cause has allowed to be spread upon the motion, furnish presumptive evidence of notice; and that the question should have been left to the jury. We cannot yield our assent to either of these claims. The circumstances relied on, are: that *Turner* was the son-in-law of the defendant; who sometimes traded with him, and had an office in the vicinity of his store. Do these facts furnish the slightest presumption of notice? Were the question in regard to notice of the dishonour of a note or bill, nothing is clearer, than that this evidence could not be permitted to go to the jury; and simply because it would not conduce to prove the fact; and although the same strictness is not here required, in respect to the *time* within which notice must be given; yet we see no reason for varying the medium of proof. In this case, as well as in that, the fact must be made out, by competent testimony.

It stands conceded, then, upon the motion, that no notice of the acceptance of the guaranty was given to the defendant; and that he received no notice of the amount of advances under it, and for which he was held responsible, until two years and eight months had elapsed, after the credit on the last parcel of goods had expired. Should it have been left to the jury to say, whether or not this notice was reasonable? In reply to this enquiry, we need only refer to the cases of *Averill* & al. v. *Hedge*, 12 *Conn. Rep.* 424., and *Wilcox* v. *Roath*, 12 *Conn. Rep.* 550., decided during the present term, and in which our views upon this question are fully expressed.

Upon the whole, we are of opinion that no new trial should be granted.

The other Judges were of the same opinion.

New trial not to be granted.