## LESTER PIANO COMPANY v. ROMNEY.

No. 2375.   Decided August 7, 1912.   Rehearing denied August 27, 1912 (126 Pac. 325).

1.  GUARANTY—ACCEPTANCE—NECESSITY.   Where a guaranty is executed and delivered at the request of the guarantee, notice of acceptance of the guaranty by the guarantee is not essential; but where a guaranty is executed by the guarantor without any prior request, and for no consideration moving between the guarantor and the guarantee, except future advances to be made ·to the principal debtor, notice of acceptance is necessary.   (Page 443.)

2.  GUARANTY—ACCEPTANCE—NECESSITY.   A seller to a corporation on credit demanded a guarantor, who wrote to the seller a letter reciting that he could guarantee any amount of credit that might be extended to the corporation.   The seller rejected the letter, and so notified the corporation, and requested the guarantor to execute a proposed guaranty, which was not done. *Held*, that notice of acceptance by the seller of the guaranty originally executed was essential to make the guaranty binding. (Page 444.)

3.  GUARANTY—ACCEPTANCE—NECESSITY.   A guaranty of the payment of goods which may be purchased by the principal, which recites that the guarantor can guarantee any amount of credit that may be extended, is a continuing guaranty to pay an indefinite future amount arising out of future credits, and notice of acceptance is essential to bind the guarantor.   (Page 445.)

4.  GUARANTY—ACCEPTANCE—NECESSITY.   Where the parties understood that the liability of a guarantor in a continuing guaranty would be increased and diminished from time to time, and the guaranty was uncertain as to when it would cease to be binding on the guarantor, notice to the guarantor by the guarantee within a reasonable time after the closing of the transactions of the amount of the liability of the guarantor must be given to bind him.   (Page 446.)

5. GUARANTY — RELEASE OF GUARANTOR—ACTS CONSTITUTING. A guarantor of the payment of debts incurred by a corporation in the purchase of goods on credit is not liable for debts incurred by the corporation, after an amendment of its articles of incorporation and a change in the corporate name, for goods purchased by the corporation in its new name, in the absence of evidence that the two corporations were one and the same, or that both were composed of the same persons, managed by the same officers, engaged in the same business; or that there was no change in the composition or operation of the corporation, or that the one succeeded to the property rights and privilege of the other. (Page 446.)

6. GUARANTY—LIABILITY OF GUARANTOR—CONSTRUCTION OF CONTRACT OF GUARANTY. A guarantor deriving no benefit from the transaction is held only to the strict terms of his guaranty. (Page 446.)

APPEAL from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by Lester Piano Company against George Romney.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*Collins & Palmer* for appellant.

*Stewart, Bowman & Morris* for respondent.

## RESPONDENT'S POINTS.

A guaranty is a contract, which, after the intention of the parties has been ascertained, must be construed strictly in favor of the guarantor. (*Daly v. Old,* 35 Utah, 74, 99 Pac. 460; *Crooks v. Propp,* 66 N. Y. Supp. 753; *Acme Mfg. Co. v. Reed,* 197 Pa. 359.) And the language should not be strained beyond its natural meaning to enlarge the liability of the guarantor. (*Schwartz v. Hyman,* 107 N. Y. 562.)

It is contrary to all reason and law to say that Mr. Daynes could bind Mr. Romney on Mr. Daynes' personal promise

to appellant that he would secure a guaranty from Mr. Romney when Mr. Romney knew nothing of it and when his letter was not intended by him to and did not in fact constitute a guaranty. And it would make no difference that the appellant relied upon this letter as a guaranty if it was not such in fact. (*Crooks v. Propp*, 66 N. Y. Supp. 753; *Miami County National Bank v. Goldberg*, 113 N. W. [Wis.] 391; 1 Brandt on Suretyship and Guaranty, paragraph 205.)

Before a guaranty can become binding upon the guarantor there must be a meeting of the minds of the contracting parties. It is elementary that there can be no valid contract of guaranty without the mutual assent of the parties. (*Douglas v. Reynolds*, 7 Peters [U. S.] 113; *Wells v. Davis*, 104 U. S. 159; *Smith v. Bowman*, 32 Utah, 38; *Davis Sewing Machine Co. v. Richards*, 115 U. S. 524.) The guarantee must accept the guaranty before it can become binding upon the guarantor. (*Douglas v. Reynolds*, 7 Peters [U. S.], 113; *DeCremer v. Anderson*, 113 Mich. 578; *Acme Manufacturing Co. v. Reed*, 197 Pa. 359; *Detroit Free Press v. Pattengill*, 155 Mich. 272; *Davis Sewing Machine Co. v. Richards*, 115 U. S. 524; *Cremer v. Higginson*, 1 Mason 340; *Miami County National Bank v. Goldberg*, 113 N. W. [Wis.] 391; *Craft v. Isham*, 13 Conn. 28; *Ulster County Saving Inst. v. Young*, 161 N. Y. 23, 55 N. E. 483.)

To bind a guarantor the future advances must not be upon the promise of the principal debtor to secure a guaranty, but upon the guaranty itself, after it has been delivered and accepted. (*Douglas v. Reynolds*, 7 Peters, 113; *McNaughton v. Conklings*, 9 Wis. 289, 296.)

If respondent's letter be a guaranty, it is not an absolute or unconditional guaranty. (*Davis Sewing Machine Co. v. Richards*, 115 U. S. 524; *Nading v. McGregor*, 121 Ind. 465.)

In the case of a continuing guaranty where future advances or future extensions of credit are guaranteed, the guarantee must give the guarantor reasonable notice of default of the principal debtor in order to hold the guarantor. Otherwise the guarantor is discharged. (*Douglass v. Rey-*

nolds, 7 Peters, 113, 125; *Davis v. Mills*, 55 Iowa, 543; *Singer v. Littler*, 56 Iowa, 601; *Nading v. McGregor*, 121 Ind. 465; *Craft v. Isham*, 13 Conn. 28.)

This court held in *Smith v. Bowman*, 32 Utah, 38, that "it is well to bear in mind that sureties are favorites of the law, and that their liability is not to be extended by implication beyond the terms of their contracts. They are bound by their agreement and nothing else; and they have a right to stand upon the strict terms of their obligations."

This same doctrine of *strictissimi juris* is approved by this court in *Daly v. Old*, in 35 Utah, 74, 99 Pac. 460, in the construction of contracts of guaranty and has received universal approval by the courts of this country. (20 Cyc., pp. 1425-6; 20 Cyc., note 63, p. 1426; *Hurlburt v. Kephart*, 115 Pac. [Colo.] 521; *Crooks v. Propp*, 66 N. Y. Supp. 753; *Ulster County Savings Inst. v. Young*, 161 N. Y. 23; *Lamm v. Colcord*, 98 Pac. [Okla.] 355; *Crane v. Specht*, 39 Nebr. 123; *Grant v. Naylor*, 4 Cranch [U. S.] 224; *Cremer v. Higginson*, 1 Mason, 340.)

STRAUP, J.

The plaintiff, a Pennsylvania corporation, seeks to recover from the defendant on an alleged guaranty for future obligations of the Daynes & Romney Piano Company, a Utah corporation, at Salt Lake City. The case was tried to the court on an agreed statement of facts. The defendant had judgment, from which the plaintiff appeals.

Its contention is that on the agreed facts it, and not the defendant, was entitled to judgment. The substance of the agreed statement is:

In March, 1904, the defendant was a stockholder and an officer of the Daynes & Romney Piano Company, which had been doing business with the plaintiff in purchasing pianos from it. At that time Pressey, a representative and an officer of the plaintiff, and under instructions from it, informed Daynes, the manager of Daynes & Romney Piano Company, that the plaintiff would require security for the payment of future goods sold on "terms of one-quarter each, four, eight,

twelve, and sixteen months' time after delivery," and that
on receipt of bills of goods Daynes & Romney Piano Com-
pany would be required to execute promissory notes for the
amount thereof, payable in four, eight, twelve, and sixteen
months. Daynes stated to Pressey that he would obtain from
the defendant "a letter addressed to" the plaintiff. That con-
versation occurred in Salt Lake City. Later, and on March
31st, the plaintiff wrote Daynes & Romney Piano Company:
"When our Mr. Pressey was in Salt Lake on the 19th inst.
and received your esteemed order for pianos, he mentioned
we were to receive from you a guaranty of Mr. George Rom-
ney (the defendant). We trust the matter has not been
lost sight of, and would be pleased to have you give same
your kindly consideration." On April 5th Daynes, as the
manager of Daynes & Romney Piano Company, wrote: "Yes,
we did promise Mr. Pressey that we would send you a letter
from our Mr. George Romney; but we have not been able
to locate him since that time. As soon as we run across
him, we will have him write you. We notice that you are
billing the goods to us on twelve, when it should be sixteen,
months under the new arrangement." Plaintiff, on April
9th, wrote: "We hope you will be able to send letter from
Mr. Romney soon. Send the settlements in accordance with
the new terms arranged through Mr. Pressey." On April
15, 1904, Daynes prepared and caused the defendant to sign
a letter addressed to the plaintiff at Philadelphia. It is
dated April 15, 1904, at Salt Lake City, and reads: "Our
Mr. Daynes states that, in order to secure additional time
on the goods that we purchase from you, your Mr. Pressey
asked him to have me write you a line guaranteeing our good
faith. I have no doubt but what all the obligations that are
entered into by our house will be met promptly, and for
this reason I can guarantee any amount of credit that you
might extend to our firm. We will try and do a good busi-
ness with your piano, for we believe it to be a good seller.
We have already taken quite a liking to it and undoubtedly
we will put the Lester piano on a level here that it has not
heretofore stood on. I sincerely thank you for what courte-

sies you have extended to our young firm, and I hope that
our business relations will always be very pleasant. Yours
truly, George Romney." The letter was sent to the plaintiff
by Daynes, as manager of Daynes & Romney Piano Com-
pany. It is this letter upon which the alleged guaranty
is founded. The plaintiff acknowledged receipt of the let-
ter to Daynes & Romney Piano Company. It also write the
defendant: "We have your esteemed favor of the 15th, and
write to thank you very much indeed for the kindly good will
expressed therein. We assure you it is very much appre-
ciated. We are also glad to learn that the Lester piano
pleases you so well, and are confident, Mr. Romney, if you
will give the instrument a chance with the rest of your trade,
it will make its own way and prove a winner and a money
maker. The pianos on the order recently given to our Mr.
Pressey are being shipped right straight along according to
instructions. Thanking you for your esteemed patronage,
and trusting this is but the beginning of a pleasant, long-
continued and mutually profitable business connection, we
beg to remain," etc.

It will be observed that the plaintiff in this, as in the
letter to Daynes & Romney Piano Company, while thank-
ing the defendant for the "esteemed patronage" and "for the
kindly good will expressed" by him, yet remained silent as
to that portion of the defendant's letter relating to the al-
leged guaranty. This seems to have been intentional, for
on May 4th Pressey, on behalf of the plaintiff, wrote Daynes
& Romney Piano Company, expressing plaintiff's dissatis-
faction with that portion of the defendant's letter, and the
thought that the defendant by the language employed—"I can
guarantee"—had merely expressed his ability to become guar-
antor, but in effect had not guaranteed anything, and had
made no direct promise to do so. Thereupon Pressey inclosed
a draft of a guaranty prepared by himself, and requested it
to be presented to and signed by the defendant and returned
as and for the guaranty, instead of the defendant's letter.
The proposed draft was not presented to the defendant; the
manager of Daynes & Romney Piano Company writing plain-

tiff that "we don't like to bother Mr. Romney about this mat-
ter, but we assure you that the letter as it stands protects you
entirely, and we ask that you let it remain as it is." No fur-
ther communication about the matter was had. Under the
new arrangement—extending credit for sixteen months—the
plaintiff sold and delivered goods on time to Daynes & Rom-
ney Piano Company, before the defendant's letter as well as
thereafter. All the goods sold to it, and all the notes given in
payment thereof, both before and after the giving of the de-
fendant's letter, were fully paid.

In February, 1905, the defendant sold to Daynes all his
stock and interest in Daynes & Romney Piano Company and
resigned as an officer thereof. Pressey, the representative and
an officer of the plaintiff, was so notified by Daynes. In Jan-
uary, 1906, Daynes & Romney Piano Company amended its
articles of incorporation and changed its name to Daynes-
Romney-Music Company. The new company continued to do
business with the plaintiff, and purchased goods of it, as had
theretofore Daynes & Romney Piano Company. The goods,
the value of which it is sought to recover in this action, were
furnished and sold, not to Daynes & Romney Piano Company,
but to Daynes-Romney Music Company, between October,
1906, and November, 1907, and for which Daynes-Romney
Music Company had given its several promissory notes, nine-
teen in number, amounting in the aggregate to $3899, due on
different dates between February and December, 1908.
Daynes-Romney Music Company, unable to meet the notes at
maturity, requested an extension of time, which request the
plaintiff refused, and asked Daynes-Romney Music Company
to obtain the defendant's indorsement on the notes. This
Daynes-Romney Music Company declined to do, stating:
"As you have been already informed, he (Romney) severed
his connection with our firm several years ago and has noth-
ing whatever to do with it." Further correspondence between
the plaintiff and Daynes-Romney Music Company with re-
spect to a settlement and payment of the account was had;
but no correspondence or communication was had with the
defendant, nor was notice given him of goods, or the amount

thereof, sold to either company, nor of any default or failure to pay for them, nor of the state of the account between the plaintiff and either company, nor was any demand or claim made on the defendant until the commencement of this action in April, 1911, and after the bankruptcy of Daynes-Romney Music Company.

Upon these facts the court stated conclusions of law:

"1.  That the defendant's letter, upon which this action is based, does not constitute a guaranty.

"2.  That said letter, sued upon as a guaranty by the plaintiff, was never accepted by the plaintiff, nor relied upon by said plaintiff.

"3.  That no reasonable notice was given the defendant by the plaintiff of the amount of credit extended, nor of the default of the principal debtor to pay its indebtedness when due.

"4.  That the indebtedness represented by the notes sued on herein was not incurred by the Daynes & Romney Piano Company, the company referred to in defendant's letter, but by the Daynes-Romney Music Company."

These conclusions are assailed.  It is not necessary to determine whether all of them are justified, for under the facts we are of the opinion that (1) a notice of acceptance by the plaintiff of the guaranty was essential to a completed contract, and (2) that the goods, the value of which it is sought to recover from the defendant on the alleged guaranty, were not sold to the company whose obligations the defendant had proposed to guarantee.

There is much confusion in the cases as to what constitutes an absolute or conditional guaranty, and as to whether notice of acceptance by the guarantee to the guarantor is an essential to show mutual assent, and to constitute a completed contract.  Appellant urges that, on authority of *Mott Iron Works v. Clark,* 87 S. C. 199, 69 S. E. 227, *Davis v. Wells,* 104 U. S. 159, 26 L. Ed. 686, *Davis Sewing Machine Co. v. Richards,* 115 U. S. 524, 6 Sup. Ct. 173, 29 L. Ed. 480, 20 Cyc. 1409, notes 16 L. R. A. (N. S) 367, and 15 Ann. Cas. 1164, notice of acceptance was not here essential

to a completed contract. These authorities are to the effect
that a guaranty executed and delivered at the request of the
party guaranteed is to be deemed the answer of the guarantor
to a proposal made to him, and there is thus constituted the
mutual assent necessary to the consummation of a contract
of absolute guaranty, and in such case notice of acceptance by
the guarantee is not essential. But where a guaranty signed
by the guarantor without any previous request of the other
party, and in his absence, for no consideration moving be-
tween them, except future advances to be made to the princi-
pal debtor, is, in legal effect, a mere offer or overture of guar-
anty, and hence, to constitute mutual assent and a completed
contract, notice of acceptance of the guaranty by the guaran-
tee is necessary. Mr. Justice Gray, in the case of *Davis Sew-
ing Machine Co. v. Richards,* 115 U. S. 524, 26 L. Ed. 686,
puts the proposition thus:

> "A contract of guaranty, like every other contract, can only
> be made by the mutual assent of the parties. If the guaranty is
> signed by the guarantor at the request of the other party, or if
> the latter's agreement to accept is contemporaneous with the guar-
> anty, or if the receipt from him of a valuable consideration, however
> small, is acknowledged in the guaranty, the mutual assent is proved,
> and the delivery of the guaranty to him or for his use completes
> the contract. But if the guaranty is signed by the guarantor with-
> out any previous request of the other party, and in his absence,
> for no consideration moving between them, except future advances
> to be made to the principal debtor, the guaranty is in legal effect
> an offer or proposal on the part of the guarantor, needing an ac-
> ceptance by the other party to complete the contract."

Generally speaking, so far as ascertaining the mutual as-
sent of the parties, and determining whether there was or
was not a completed contract, we think the rule as an-
nounced is correctly stated. So let it be assumed that
the defendant's letter to the plaintiff was an answer
and in response to the plaintiff's request for a guaranty,
which, when it was received by the plaintiff, had it been ac-
cepted and acted on by it, would have constituted a completed
contract without notice of acceptance by the plaintiff. But
in this instance the plaintiff in fact, when the letter was re-

ceived by it, did not accept it, but in effect rejected it, and so notified the principal debtor, and requested the defendant to sign and deliver a guaranty as proposed and drafted by the plaintiff, instead of the defendant's letter. Hence the prior request of the plaintiff, and the defendant's letter in answer thereto, did not constitute that mutual assent necessary to the consummation of a contract; for, up to this point, the minds of the contracting parties had not met as to the terms of the guaranty. The plaintiff requested a guaranty. The defendant in response thereto proposed one; but the plaintiff declined to accept it, and proposed another. Under such circumstances it cannot well be said that the receipt of the defendant's letter by the plaintiff constituted a consummation of a contract. The plaintiff's proposed guaranty was not given. If, therefore, it desired to change its mind, and to accept the guaranty theretofore proposed by the defendant, and rejected by it, notice to that effect was essential. Without it there was no mutual assent, and hence no contract.

Furthermore, the proposed guaranty by the defendant was not to pay an existing or future debt or obligation of a definite character, or of a known or specified amount, or one where the guarantor knew precisely what he guaranteed, or the extent of his responsibility. It was a continuing guaranty to pay an unknown, indefinite, and unspecified future amount or debt, upon the default or miscarriage of another, arising out of future advances and credits to be given such other; and because of the peculiar nature of the proposed guaranty, notice of acceptance was essential, in order that the defendant might know the amount of his liability and be given an opportunity to take indemnity from the principal debtor, or of otherwise securing himself against loss, if he so desired. Under such circumstances, proof of acceptance by the guarantee and notice thereof to the guarantor was an essential to the inception and character of the contract, and hence good faith and the nature of the negotiation required the party accepting and acting on such a guaranty to notify the other party. (*De Cremer v. Ander-*

*son,* 113 Mich. 578, 71 N. W. 1090; *Detroit F. Press v. Pattengill.* 155 Mich. 272, 118 N. W. 927; *Acme Mfg. Co. v. Reed,* 197 Pa. 359, 47 Atl. 205, 80 Am. St. Rep. 832; *Craft v. Isham,* 13 Conn. 28.)

Again, under a continuing guaranty, as this, where the parties must have understood the liability thereunder would be increased and diminished from time to time, and the guaranty, uncertain as to when it would cease to be binding upon the guarantor, good faith and the nature of the negotiation required notice to the guarantor, within a reasonable time after the transaction closed, of the amount of his liability and of what was done. (*Davis Sewing Mach. Co. v. Mills,* 55 Iowa, 543, 8 N. W. 356; *Singer Mfg. Co. v. Littler,* 56 Iowa, 601, 9 N. W. 905; *Craft v. Isham, supra; Nading v. McGregor,* 121 Ind. 465, 23 N. E. 283, 6 L. R. A. 686.)

Lastly, the defendant's proposed guaranty was a collateral undertaking for the payment of the debt or obligation of Daynes & Romney Piano Company, a corporation. All the goods sold to that corporation were paid for. Nearly two years after the defendant's alleged guaranty, Daynes & Romney Piano Company amended its articles and changed the name of the corporation to Daynes-Romney Music Company. The goods, the value of which it is sought to recover under the guaranty, were sold to Daynes-Romney Music Company, not to Daynes & Romney Piano Company. It is held in *Crane v. Specht,* 39 Neb. 123, 57 N. W. 1015, 42 Am. St. Rep. 562, that, under such circumstances, there is no liability under the guaranty; the court applying the same rule as to the discharge of a guarantor by the change in the name of a partnership. (Notes, 15 Ann. Cas. 1020.) This, on the well-established doctrine that a guarantor, like a surety, deriving no benefit from the transaction, is regarded a favorite of the law, and is held only to the strict terms of his obligation. At the time the goods were sold, there was no Daynes & Romney Piano Company. It either ceased to exist or had become Daynes-Romney Music Company.

"The name is an indispensable part of the constitution of every corporation, the knot of its combination, as it has been called, without which it cannot perform its corporate functions."

1 Cook on Corporations (6 Ed.), sec. 15.

In the absence of evidence, it will not be presumed that Daynes & Romney Piano Company and Daynes-Romney Music Company were one and the same company, or composed of the same persons, managed by the same officers, and engaged in the same business. The plaintiff here was the actor. It alleged, and it was found, that Daynes & Romney Piano Company amended its articles and changed its name to Daynes-Romney Music Company. But no averments are made, and no facts found, that the two companies were one and the same company, or that both were composed of the same persons, managed by the same officers, engaged in the same business, or that there was no change in the composition or operation of the company, or that the one succeeded to the property rights, franchises, and privileges of the other. Without some such allegations and proof, the identity of the two companies cannot be presumed, and, until that is shown, proof that goods were sold to the Daynes-Romney Music Company and that it defaulted does not show a liability under the guaranty given to answer for the default of Daynes & Romney Piano Company.

For these reasons, we think the judgment of the court below was right, and it therefore is affirmed, with costs.

FRICK, C. J., and McCARTY, J., concur.