MAY 29, 1802.

# Lewis Craig *v.* Trustees of Transylvania.

*Upon an appeal from a judgment of the Lexington District Court.*

1. Where an act of the legislature of Virginia granted 8,000 acres of land to trustees for school purposes, describing them to be within the county of Kentucky, formerly the property of M. C. & M., British subjects, which had escheated to the commonwealth, and the special verdict of the jury found that C., one of said subjects, had been owner of two tracts of 3,000 acres each within that county—*Held:* That the description in the act was sufficiently definite to uphold the grant as against a junior patentee of the same 3,000 acre tracts.

2. A survey was made in 1774, but no warrant to authorize it was issued until 1775. An act of the legislature declared all surveys made without a warrant void—*Held:* Nevertheless, that a junior patentee of the same land could not be injured by the irregularity, and that his title could not prevail against the elder patent.

3. No person can maintain an action for a wrongful act from which he has sustained no injury.

4. Where an act of the legislature granted 8,000 acres of land, late the property of aliens, which had escheated to the commonwealth—*Held:* That the act must be construed to pass not merely the right of the aliens, but all the title of the commonwealth from whatever source derived.

Craig, who was also plaintiff in the court below, claims the land in contest under a patent dated December 5, 1788, founded on part of two land office treasury warrants, one dated July 28, 1783, and the other September 20, 1783. And the defendants claim, under a grant contained in an act of the general assembly of Virginia, passed at their May session, in the year 1780, entitled "an act to vest certain escheated lands in the county of Kentucky in trustees for a public school;" and on another act of that assembly, passed at their May session, 1783, entitled "an act to amend an act to vest certain escheated lands in the county of Kentucky in trustees for a public school," in which the grant specified in the act of 1780 is recognized and confirmed. The parts of the act of 1780 material to be attended to in this suit are, "Whereas, it is represented to the general assembly, that there are certain lands within the county of Kentucky, formerly belonging to British subjects, not

yet sold under the law of escheats, which might be a valuable fund for the maintenance and education of youth. Be it therefore enacted, that 8,000 acres of land, late the property of Robert McKenzie, Henry Collins and Alexander McKee, be and the same is hereby vested in trustees as a free donation from this commonwealth, for the purpose of a public school; saving and reserving to the said McKenzie, Collins and McKee, and every of them, and all and every person or persons claiming under them or either of them, all right and interest to the above mentioned lands, or any part thereof to which they may be by law entitled." And the parts of the act of 1783 material to be attended to are, "Whereas, by an act of assembly, 8,000 acres of escheated lands were vested in trustees for the purpose of a public school. Be it therefore enacted, that William Fleming, William Christian, etc., are constituted a body politic and corporate, to be known by the name of the trustees of the Transylvania Seminary. And be it further enacted, that the said 8,000 acres of land, late the property of Robert McKenzie, Henry Collins and Alexander McKee, be hereafter held, and the same is hereby vested in the before named trustees and their successors, for the purposes and under the reservations in the said act expressed." From which it appears that the defendants have the eldest grant or grants for the land in controversy; and therefore it would seem to follow that in the present action at law, nothing more was necessary to be shown. But to invalidate those grants, it is urged by the counsel for the plaintiff, that the lands granted are not particularly described. From the special verdict rendered by the jury, and from the exhibits which are made a part of their verdict, it appears that the land held by Collins lay in the county of Kentucky; that 3,000 acres of land, a part of which is now in contest, was surveyed in the name of Henry Collins, in 1774, on the head waters of the Elkhorn, adjoining the land of Edward Ward; and that in 1780, 3,000 acres of land, the property of Henry Collins, in the county of Kentucky, on the south fork of Elkhorn creek, joining Ward, was divested from him by an escheater's inquest; and the jury found that to their knowledge he had no other real property in that county. These facts do not directly ascertain the land granted to the defendants, but they are as pointed as the nature of the case would admit, and satisfactorily prove that no other land could have been intended. In a devise or contract equally vague, such facts would no doubt sufficiently identify the property. To which might be

Craig *v.* Trustees of Transylvania.

added, that in this case, if any uncertainty as to the land in-
tended had really arisen, the defendants, to prevent their grant
from being defeated, had a right, as they have done, to take posses-
sion of any tract of Collins', which, together with the other lands
specified in their grants, amounted to the quantity granted to
them, unless it could be shown that he claimed other lands which
would have accorded with the grant equally well.  Therefore, the
court is of opinion that the defect of specialty in the grants is sup-
plied by the finding of the jury.  To invalidate the grants in ques-
tion, it is further urged, that the title thereby conveyed to the
defendants, so far as it relates to the claim of Collins, has no legal
foundation; and that in an action of ejectment the legality of all
the proceedings on which a title is founded, so far as they appear
of record, may with propriety be contested.  And the court not
being decided to the contrary, is induced, under that restriction,
to go into an investigation of the claim of the defendants from its
origin.  It appears that the defendants' claim was surveyed for
Henry Collins in the year 1774, and the certificate thereof duly
recorded, which purports to have been made on a warrant granted
for military services; but no warrant to authorize the survey
issued before 1775; and by the act of 1779, entitled "an act for
adjusting and settling the titles to claims to unpatented lands,
etc., all surveys made without a warrant or some other legal
authority, are declared void.  In deciding this cause it does not
seem necessary to ascertain at large the true construction of this
clause of the act; it being sufficient to observe, that after a pat-
ent had issued on a survey of the kind, the land being no longer
waste and unappropriated, could not be located by any other
adventurer, on a purchase from the commonwealth made subse-
quent to the date of the patent.  This doctrine is not only founded
on the act of 1779, entitled " an act for establishing a land office,"
etc., but on the general principles of law, equity, and policy.  For
although the commonwealth might have been injured, a sub-
sequent adventurer could have no just cause of complaint.  And
it is believed that no precedent can be found of a private action
having been sustained, where the transaction complained of was
not injurious to the plaintiff or his assignee at the time it hap-
pened.  Or, if there be any apparent exceptions, they were *qui tam*
actions, or others of a similar nature, permitted by express stat-
utes to promote the public weal.  As to the policy, it would be hor-
rid that nothing short of fifty years actual quiet possession could

Craig *v.* Trustees of Transylvania.

bar such adventurers from taking advantage of the multitude of irregularities and inadvertencies committed in acquiring titles to land in this country. Suppose, then, that Collins had obtained, in the usual way, a patent for this land prior to the plaintiff's purchase, and the defendants now held it as purchasers from him; the reasons which have been assigned, as well as a former decision of this court, in the case of *Hazelrigg* against *Cleveland*, would forbid success to the plaintiff, even were this a suit in chancery. The counsel for the plaintiff have displayed great ingenuity in attempting to show that the acts of the legislature of Virginia, which are relied on by the defendants, have not conveyed to them a title, but only transferred to them Collins' claim, which, by a prior act, had been declared void. But it seems to the court that those acts do contain full and unequivocal grants for the land, and that the name of Collins therein, and his claim, which was supposed to have been escheated, ought only to be considered as descriptive of the land intended to be granted. Besides, if Collins had no legal claim to it, the right must have remained in the commonwealth; and it is conformable to a maxim of law, that even when a grant can not take effect according to the letter, it shall, if possible, receive such construction as will render it valid. And it would be gross iniquity in a grantor to convey an inferior right, and tacitly retain a superior one; which, therefore, it can not be admitted the legislature intended to do. And it is evident from the reservation contained in both of those acts, which only save to Collins and those claiming under him the privilege of contesting the title, that the legislature meant to convey the whole right of the commonwealth to the defendants. These considerations render it unnecessary to determine whether an escheator's inquest legally conducted was essential to the completion of the defendants' title, although it might be so in a contest with Collins. And these considerations also explain those precedents which have been cited to prove that the lord of escheats does not hold escheated lands by any other or higher title than he acquired by the escheat. This is only true with regard to adverse titles derived from himself; because to extend the doctrine further would be law without reason. As to those who have title paramount to that derived from Collins, if such there be, the right of the commonwealth must yield; but as to all others, when it granted this land to the defendants, its right by escheat was merged in its superior right as original proprietor of all the lands in the state. In this case the distinction has pecu-

liar force. Collins had not obtained a patent for the land, so that as to him the commonwealth had never divested itself of its original right. How would the case have stood had this claim of Collins', however illegal, been escheated and sold under the directions of the act concerning escheats, which has been mentioned? Could the land in any form of suit be recovered from the purchaser by a person who had made a subsequent purchase of it from the commonwealth? That act as well as reason will answer in the negative. And its being held by the defendants under special grants from the legislature, which must be equal if not superior in dignity to any grant obtained from its ministerial officers, can not change the law or equity arising on the subject. Therefore, it is considered by the court, that the judgment aforesaid be affirmed, and that the appellees recover of the appellant their costs in this behalf expended, which is ordered to be certified to the said court.