Marshall, Ch. J.,
 

 delivered the opinion of the court. — This suit was instituted by Drake & Mitchel, merchants of Havana, in Cuba, against Charles Edmondston, merchant, of Charleston, in the court of the United States for the sixth circuit and district of South Carolina ; in order to recover the balance of an account due to Drake & Mitchel from J. & T. Robson, who were merchants and partners of Columbia, in South Carolina.
 

 Thomas Robson, being about to proceed to the Havana, for the purpose of making a speculation in coffee, obtained from Edmonston the following letter of credit.
 

 Charleston, April 16th, 1825.
 

 Messrs. Castillo & Black :
 

 Gentlemen : — The present is ^intended as a letter of credit in favor of my regarded friends, Messrs. J. & T. Robson, to the amount of forty, or fifty thousand dollars, which sum they may wish to invest, through you, in the produce of your island. Whatever engagements these gentlemen may enter into will be punctually attended to. With my best wishes for the success of this undertaking, I am, gentlemen, yours respectfully, Charles Edmondston.
 

 On his arrival in Havana, Mr. Robson presented his letter of credit to Messrs. Castillo & Black; who being unable to undertake the business, introduced him to Drake & Mitchel, and showed them the letter of Edmondston, but did not deliver it to them. At this interview, an agreement was entered into between Robson and Drake
 
 &
 
 Mitchel, the particulars of which are stated in the following letter:
 

 
 *405
 
 Havana, April 28th, 1825.
 

 Messrs. Drake & Mitchel :
 

 Gentlemen : — I intend sailing to-morrow morning in the schooner Felix bound for Charleston, South Carolina, wind and weather permitting. I will thank you to execute the following order, at your earliest convenience, provided you feel yourselves warranted in so doing from the letter of credit I produced, viz., two to three thousand bags of prime green Havana coffee, provided the same can be had at prices from eleven to thirteen dollars, and for extra prime large lots, thirteen and a half. Bills on New York at sixty days at two and a half to five per cent, premium, and to be governed in said purchase by the rise and fall in foreign markets, exercising your better judgment thereon. Said coffee to be forwarded, by first good opportunity, to Charleston, South Carolina, on board of a good, sound and substantial vessel, addressed to the care of Boyce & Henry, Kunhart’s wharf, Charleston. Bills of lading to be immediately forwarded to New York, and insurance ordered thereon to the full amount. Invoice of coffee, with duplicate bills of lading, to be made out in the name of J. & T. Robson, and forwarded, with advice of drafts, to the care of Boyce & Henry, Charleston. Wishing your success in said purchase ; and claiming your particular att ention thereto ; I am, gentlemen, your obedient servant,
 

 Tho. Robson.
 

 Please inform me the name of the house to whom the bills of lading,
 
 &o.,
 
 will be addressed.
 

 *On the succeeding day, notice of this arrangement was commu- .. nicated to Charles Edmondston in the following letter. >-
 

 Havana, April 29th, 1825.
 

 Charles Edmondston, Esquire :
 

 Dear Sir: — In virtue of your letter of credit to Messrs. Castillo
 
 &
 
 Black, in favor of Messrs. J.
 
 &
 
 T. Robson, and at their request, we have consented to purchase two thousand bags of coffee to be consigned to Messrs. Boyce
 
 &
 
 Henry, of your city; the insurance to be effected by Messrs. Goodhue & Co., of New York, upon whom we are to draw for the amount, by reason of the facility of negotiations ; Mr. Robson, or his friends, remitting the money to these gentlemen to meet our drafts. Mr. Robson, who carries this, will no doubt explain to you in person this negotiation, and we trust that there will be no - demur in-forwarding the necessary funds, with the cost of insurance. We are, &c., Drake
 
 &
 
 Mitchel.
 

 On the 25th of May, a short letter on business from Charles Edmonston to Drake
 
 &
 
 Mitchel concluded in these terms :
 

 “ In acknowledging the receipt of yours of the 29th of April, I cannot help expressing my grateful feelings at the manner you treated my letter of credit in Robson’s favor ; I am, &c., Charles Edmondston.”
 

 The shipment of coffee for J. & T. Robson was completed by the iVth of May ; and on the 21st of that month, Drake
 
 &
 
 Mitchel had drawn bills on New York for nearly $15,000, which were regularly paid. On that day, they determined, of their own accord, to change the mode of reimbursement; and on the 25th, drew bills on London for 4000?. sterling. This was eommu
 
 *406
 
 nicated to Messrs. Boyce
 
 &
 
 Henry, the agents of J.
 
 &
 
 T. Robson, at Charleston, in the following letter :
 

 21st May 1825.
 

 Gentlemen : — We crave reference to our last respects
 
 per
 
 brig Catharine, which vessel we hope is safely arrived at this date. We have this day received accounts from your city and from New York, announcing to us the decline in the price of coffee ; it is, therefore, well that we had not gone to ^ . the full extent of the instructions of Mr. Robson. We also Uiote the decline of your exchange on London, and as ours is still maintained at fourteen per cent., it has occurred to us, to alter our plan of reimbursements, for the benefit of the interested in these coffee purchases, by di-awing on London for the balance of our shipments — for some houses here are drawing on the United States at par, to one per cent.; a rate which we cannot submit to; we are accordingly about to value on our friends Messrs. Campbell, Bowden & Co., to be covered by you, or Messrs. Goodhue & Co.,as you may direct, to the amount of 40007. sterling, which at $444, at fourteen per cent., amounts to $20,246.40. And we have already drawn upon Messrs. Goodhue
 
 &
 
 Co., $12,699.12, wifh premium, three, and two and a half per cent.; $337.43, and to complete this account we have again drawn on the same $2071.34, at two and a half per cent., $2123.12 ; making together $35,406.07, from which deducting our commission for drawing and negotiating, two and a half per cent., the remainder, $34,522, will then be equal to the amount of our three invoices
 
 per
 
 Eagle, Hannah and Catharine, as per inclosed statement. We trust that these dispositions will meet your approbation, and we pray you to make the necessary remittances to Messrs. Campbell, Bowden
 
 &
 
 Co., including their commission and any other incidental charges.
 

 On the same day, Drake & Mitchel drew their last bill on New York, which was duly honored. J. & T. Robson, afterwards, on the 4th of June, assented to this alteration in the mode of reimbursement; and directed then-agents, Boyce & Henry, to conform to it. They remitted a bill drawn by J. B. Clough on his firm of Crowder, Clough & Co., of Liverpool, at sixty days sight, for 40007. sterling, on account of Drake
 
 &
 
 Mitchel. No notice of this transaction appears to have been given to Edmondston. On the „ .. 16th September, Drake & Mitchel Unclosed to him for collection J a small order on T. Robson, in the following words :
 

 Havana, 16th September 1825.
 

 Thomas Robson, Esq., Charleston. — Please pay Charles Edmondson, Esq., or order, the sum of twenty-six dollars, for balance of your account with, dear sir, your obedient servants,
 

 Drake & Mitchel.
 

 The bill on Crowder, Clough & Co. having been returned under dishonor, Drake
 
 &
 
 Mitchel, in a letter of the 15th of October, employed Mr. Edmondston as their agent, to obtain its amount from the Robsons, or from Boyce
 
 &
 
 Henry. In a letter of the 5th of November, Edmondston informed Drake
 
 &
 
 Mitchel of the ill success of his endeavours to procure payment. The Robsons, who were insolvent, considered themselves as discharged from the debt, by remitting the bill on London, in conformity with the directions of Drake & Mitchel; and Boyce & Henry, whose names were not on the bill, said they had acted only as agents of the Robsons, and of Drake
 
 &
 
 Mitchel.
 
 *407
 
 After some correspondence between Edmondston, and Drake
 
 &
 
 Mitchel, on the liability of the former for the protested bill on .Crowder, Clough & Co., in the course of which Edmondston transmitted to them a copy of his letter to Castillo & Black ; this suit was instituted on the original letter of credit of the 16th of April 1825, and on the letter addressed by Edmondston to Drake & Mitchel, on the 25th of May following. At the trial of the cause, the following bills of exceptions were taken :
 

 1. The counsel for the defendant insisted, that the letter of the defendant, of the 16th of April 1825, addressed to Castillo & Black, was not a general letter of credit, but an engagement only to guaranty the contracts of J. & T. Robson with Castillo & Black, and not with the plaintiffs ; and that the said guarantee was not assignable ; and that the defendant, on the said letter, was not accountable to the plaintiffs. But the court instructed the jury, that the said letter of the 16th of April 1825, was a general letter of credit, in favor of J. & T. Robson ; that it authorized the said Castillo
 
 &
 
 Black, *not only to give, but to procure a credit for the said Robson ; and if the jury believed, that under the said letter, the said Castillo *-
 
 &
 
 Black had procured such credit for them with Drake
 
 &
 
 Mitchel, that Drake
 
 &
 
 Mitchel, the plaintiffs, had, under this letter, the same right to call on the defendant to make good the contracts of J. & T. Robson with them, the plaintiffs, as Castillo
 
 &
 
 Black would have had, if -they, Castillo & Black, had, on the faith of this letter, contracted with the said J.
 
 &
 
 T. Robson.
 

 2. And the counsel for the defendant contended, and so moved the court to instruct the jury, that in order to make the defendant liable to the plaintiffs, under the sáid contract, they were bound, by the law-merchant, to give him due notice thereof ; and as the defendant neither received notice of it, nor ever assented to the subsequent change as to the place or form of payment, he was fully discharged therefrom; on which the court, being divided in opinion, refused to give the instruction. It was, therefore, not given to the jury. And, on the contrary, his honor Judge Lee, one of the presiding judges, charged and instructed the jury, that they, the plaintiffs, were not bound to give the defendant notice of the original contract, and though they gave him notice of it, they were not bound to give him notice of the alteration made in it.
 

 3. And the counsel for the defendant argued to the court, and requested the court so to instruct the jury, that if the defendant was bound at all to the plaintiffs, he was bound for the performance of the agreement made between the Robsons and the plaintiffs, as set forth in the letter of Thomas Robson to them, dated the 28th of April, and the plaintiffs’ letter of the 29th of April 1825, to the defendant; and that the arrangement afterwards made between the plaintiffs and Robson, for payment in London, instead of New York, was an alteration of the contract; and the defendant not having consented thereto, was not bound for the performance of the agreement thus altered, but was discharged from his liability, if, in fact, he was at all liable : but, the court, being divided, refused to give such instruction.
 

 4. And the counsel for the defendant further argued to the court, and requested the court so to charge and instruct the jury, that the guarantee of the defendant was not a ^continuing guarantee, and could not be extended to any other engagements than those mentioned in the let- '■ ter of the plaintiffs to him, of the 29th of April aforesaid, and set forth in
 
 *408
 
 that of Thomas Robson to them, of the 28th of April aforesaid ; and that the change in the place of payment, from New York to London, made without due notice thereof given to the defendant, discharged him from the said guarantee : but the court, being divided in opinion, refused to give such instruction.
 

 5. And the counsel for the defendant further argued to the court, and requested the court so to charge and instruct the jury, that the plaintiff's, in their letter of the 29th of April, having given notice to the defendant of the contract made by them with the Robsons, in virtue of his the defendant’s letter of the 16th of April, were bound to give him notice of the change of the contract; and as they did not give him any such notice, he is hereby discharged. But the court, being divided in opinion, refused to give the instruction : it was, therefore, not given to the jury ; and on the contrary, his honor Judge Lee, one of the presiding judges, charged and instructed the jury, that the plaintiffs were not bound to give the defendant notice of the original contract; and though they gave him notice of it, they were not bound to give him notice of any alteration made in it.
 

 The jury found a verdict for the plaintiffs ; the judgment on which is brought before this court by writ of error.
 

 In the view which the court takes of the case, it is necessary to decide on the first instruction given by the circuit court. If the letter of the 16th of April 1825, was limited to Castillo & Black, that of the 25th of May, unquestionably, sanctioned the advances made by Drake
 
 &
 
 Mitchel on its authority ; and made Edmondston responsible for Robson’s contract with them. It is, on his part, a collateral undertaking, which binds him as surety for the Robsons, that they will comply Avith their contract. No doubt exists respecting his original liability. The inquiry is, has the subsequent conduct of the parties released him from it ?
 

 It is necessary to ascertain exactly Avhat the contract really Avas. The evidence of it is to be found in the letter of T. Robson to Drake
 
 &
 
 Mitchel, of the 28th of April 1825, and in the letter written by Drake & Mitchel to % , Edmondston, on *the succeeding day. The first states the order to -I be executed by Drake
 
 &
 
 Mitchel. It is for “ tAvo or three thousand bags of prime green Havana coffee, provided the same can be had at prices, from eleven to thirteen dollars, and for extra prime large lots, thirteen and a half. Bills on NeAV York, at sixty daj^s, at two and a half to five per cent, premium, and to be governed in said purchase by the rise or fall in foreign markets, exercising your better judgment thereon.” The last states it toEdmondston in the following words : “We have consented to purchase two thousand bags of coffee, to be consigned to Messrs. Boyce
 
 &
 
 Henry, of your city, the insurance to be effected by Messrs. Goodhue & Co., of New York, upon Avhom we are to draAV for the amount, by reason of the facility of negotiation ; Mr. Robson or his friends remitting the money to these gentlemen to meet our drafts.”
 

 The contract consists of the quantity of coffee to be purchased, the house to which it Avas to be shipped, and the mode of payment. On the quantity to be purchased, Drake
 
 &
 
 Mitchel were to exercise their judgment. It was. to be from two to three thousand bags, as the rise or fall of foreign markets might render advisable. The letter of Drake & Mitchel, giving notice of the contract to Edmondston, shows their determination to limit their pnr
 
 *409
 
 chase to two thousand bags. On the other parts of the contract, if we are to judge from its language, they could exercise no discretion. The coffee was to be shipped to Boyce & Henry, of Charleston, and the mode of payment was settled definitely. It was to be by remittances to Messrs. Good-hue & Co., of New York, on whom Drake & Mitchel were to draw at a rate of exchange settled between the parties. This contract was obligatory in all its parts, and when communicated- to Mr. Edmondston, gave him precise information of the extent of his liability. His letter of the 25th of May was written with a view to the particular contract, which had been thus communicated.
 

 In estimating the influence of this notice on the cause, it has been supposed of some consequence to establish its necessity. The district judge, sitting in the circuit court, informed the jury that it was not necessary. The attempt has not been made to sustain this instruction in its terms, but to explain it so as to limit it to the necessity of giving Edmondston ‘’•'notice of the mode in which Drake
 
 &
 
 Mitchel were to be reimbursed for the coffee. This was probably the intention of the judge. It >- would, indeed, be an extraordinary departure from that exactness and precision which peculiarly distinguish commercial transactions, which is an important principle in the law and usage of merchants, if a merchant should act on the letter of this character, and hold the writer responsible, without giving notice to him that he had acted on it. The authorities quoted at the bar, on this point,- unquestionably establish this principle.
 

 If it were incumbent on Drake
 
 &
 
 Mitchel to give notice to Mr. Edmondston that they had acted on his letter' of credit, did the nature of the transaction require a communication of that part of the contract which stipulated for the mode of payment? It cannot be alleged, that this part of it was of no importance, or that it did not concern Mr. Edmondston. It is an essential article in all contracts, and was of peculiar interest to Edmondston in this. The parties thought the particular mode of reimbursement of sufficient importance to stipulate for it, expressly, in their agreement. We cannot determine positively whether it was, or was not, a matter of indifference to them. They selected this ; and when selected, it became a part of the contract. Each had consequently a right to insist upon it. We have said, that this part of the agreement was of peculiar interest to Edmondston. For any failure in it, he was responsible. Being informed of the place on which bills were to be drawn by Drake & Mitchel, and to which remittances to.meet them were to be made, he was enabled to bestow that general attention on the course of the business, which he might think necessary for his own safety. He might observe, generally, the shipments made on account of the Robsons to New York, and be led to farther inquiry by any apparent remissness. Drake
 
 &
 
 Mitchel seem to have given him the information with this view. After saying they are to draw on Messrs. Goodhue & Co., of New York, they add,
 
 “
 
 Mr. Robson, or his friends, remitting the money to these gentlemen to meet our drafts.” It was essential to Robson, or to the friends by whom the remittances might be made, ‘“that the place and persons to whom they might be made should be fixed.
 
 [1]
 
 We cannot consider this part of the agreement as immaterial. It was the part in which Edmondston was most deeply interested.
 

 Being part of the contract, it is not pretended, that Drake
 
 &
 
 Mitchel
 
 *410
 
 could alter it, without the consent of the Robsons. They could no more vary a contract made, than they could make one originally. The one, as much as the other, requires the consent of both parties. Drake & Mitchel, and the Robsons, being capable of binding themselves by an original contract, were equally capable of varying that contract at will. But though capable of binding themselves, they were not capable of binding Edmondston. To this his own consent was indispensable. Any new stipulation introduced into it, was so far a new contract, which could only affect themselves. Edmondston was a stranger to it, unless his letter to Castillo
 
 &
 
 Black. of the 16th of April, 1825, in connection with his letter to Drake & Mitchel of the 25th of May, in the same year, made him a party to it.
 

 The letter of the 16th of April, in its object and its language, is limited to a contract to be made by Robson, during his stay in the Havana. It was written for a special purpose, and its obligation could be extended no further when that purpose was accomplished. It was intended to pledge the credit of the writer to the amount of forty or fifty thousand dollars, to be invested by Robson in the purchase of the produce of the Island. The letter was directed to an operation for which Robson went to the Havana, and which was to be completed while there. It was addressed to merchants of that place, and relates to an operation to be performed in that place. If, instead of proceeding to the Havana, and purchasing the produce of the island, he had proceeded to Great Britain, and purchased a cargo of wool-lens ; it would scarcely be pretended, that the vendor trusted to this letter. Still less could it be pretended, if, after actually making the contract. in Havana, he had proceeded to Europe, and made purchases in that part of the world. The cases cited in argument show that, in law, and in the under- - standing of ^commercial men, the credit given by such a letter is confined to the particular operation and to the particular time. It extended to no contract made by Robson after returning to the United States. Still less can the letter of the 25th of May avail the defendants in error. That this is obviously confined to the contract stated in the letter of Drake & Mitchel, to which it is an answer.
 

 The credit, then, given in the letter of Edmondston was exhausted by the contract made by Robson, while at Havana, and the extent of his responsibility under those letters is confined to that contract. Drake & Mitchel, and the Robsons, could no more affect him, by any change in its terms, than by an entirely new stipulation, or an entirely new contract.
 

 It has been said, that this change was made for the advantage of the Robsons, and with their consent. It is immaterial, whether it was made for the benefit of the Robsons, or of Drake
 
 &
 
 Mitchel, or of both. They had no light, to vary a contract for their own benefit, at the hazard of Edmondston. It has been urged, that the risk of remittances to New York was as great as the risk of bills on England. Were this true, it could not affect the case. Edmondston had a right to exercise his own judgment on the risk ; and the persons who varied this contract had no right to judge for him. But is it true, that the risk was not increased ? While payments were to be made in New York, the agents in the transaction were in some measure within the view of Edmondston. He could observe their situation, and act for his own safety. This power is essentially diminished, when a bill, without his knowledge, on a house of whose stability he may be igno
 
 *411
 
 rant, is remitted, at sixty days sight, to England. It is, on every reasonable calculation, at all events, a prolongation of the risk.
 

 The contract at the Havana may be considered as one to be performed immediately. It does not appear, that any time was given for the shipment of the coffee ; and the whole transaction has the appearance that the bills were to be drawn as soon as the coffee was shipped. The last bill on New York was drawn on the 21st of May, and notice of the bill on *London was given on the 26th of that month. It may be considered, L then, as a transaction to be completed as soon as the nature of the business would permit. It might be reasonably supposed, that it would be completed before the condition of the parties would be essentially changed. Had the bill which was drawn on London been drawn at the same time on New York, there is reason to believe that it would have been paid. The change in the mode of payment, by substituting a bill on London, at long sight, necessarily prolonged the time at which payment should be made, and prolonged the risk of Edmondston. This they had no right to prolong, without his consent.
 

 It is admitted, that Drake
 
 &
 
 Mitchel could not change the mode of payment, without the consent of the Robsons. Then, it is a part of the contract ; of that contract, for which alone Edmondston became responsible.
 

 It has been said, that the engagement respecting the place of payment was contingent, dependent on the facility of negotiations, and subject to any future arrangement to be made between the parties. We do not so understand the agreement. Its terms are positive, dependent upon no contingency. “ The facility of negotiations ” was the motive for the stipulation. No hint of a reserved power to change it, is given, either in the letter of T. Robson to Drake & Mitchel, or in theirs to Edmondston. It was not a contingent but an absolute arrangement, as absolute as any other part of the contract.
 

 We think, the court erred in not giving the second, third, fourth and fifth instructions to the jury, and the judgment ought to be reversed, and the cause remanded with directions to award a
 
 venire facias ele novo.
 

 This cause came on to be heard, on the transcript of the record from the circuit court of the United States for the district of South Carolina, and was argued by counsel: On consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be and the same is hereby reversed ; and that this cause be and the same is hereby remanded to the said circuit court, with instructions to award a
 
 venire facias de novo.