Ghorson, J.
The point which has been made to sustain the demurrer to the petition, on the ground that it does not state facts sufficient to constitute a cause of action, is, that there is no statement of the acceptance of the guaranty, of notice of its acceptance, or of the credit which was given. The question, as to the necessity of such statements, to entitle *276 the plaintiffs to recover, on the guaranty, has been ably and elaborately argued by counsel.
In the case of Douglass v. Reynolds, 7 Peters, 113-129, a letter was addressed by the defendants to the plaintiffs, in the following words: “ Gentlemen — Our friend, Mr. Chester Haring, to assist him in business, may require your aid, from time to time, either by acceptance Or indorsement of his paper, or advances in cash. In order to save you from harm, in so doing, we do hereby bind ourselves severally and jointly to be responsible to you, at any time, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail to, do so.” On the trial of the case the court was asked to give as instructions to the jury, among others, the following propositions : 1. That to entitle the plaintiffs to recover on said letter of guarantee, they must prove that notice had been given, in a reasonable time after said letter of guarantee had been accepted by them, to the defendants that the same had been accepted. 2. That to entitle the plaintiffs to recover on said letter of credit, they must prove that, in a reasonable time after they had made advances, acceptances or indorsements for said Haring on the faith of .said letters of guarantee, they gave notice to said defendants of thé amount and extent thereof. 3. That to entitle the plaintiffs to recover on said letters of credit, they must prove that a demand of payment had been made of Chester Haring, the principal debtor, of the debt sued for; and in case of non-payment by him, that notice of such demand and non-payment should have been given in a reasonable time to the defendants; and in failure of such proof, the defendants are. in law discharged.”
The supreme court of the United States, in an opinion delivered by Story, J., held that the first proposition in point of law was correct, and said: “ A party giving a letter of guarantee has a right to know whether it is accepted, and whether the person to whom it is addressed means to give credit on the footing of it, or not. It may be most material, not only as to his' responsibility, but as to his future rights and proceedings. It may regulate, in a great measure, his course of conduct, and his exercise of vigilance in regard to the party *277 in whose favor it is given. Especially, it is important in the case of a continuing guarantee, since it may guide his judgment in recalling or suspending it.” As to the second proposition, it was said : “ If this had been the case of a guarantee limited to a single transaction, there is no doubt, that it would have been the duty of the plaintiffs to have given notice of the advances, acceptances or indorsements made to Haring, within a reasonable time after they were made. But this being a continuing guarantee, in which the parties contemplated a series of transactions, and as soon as the defenddants hadreceived notice of the acceptance, they must necessarily have understood that there would be successive advances, acceptances and indorsements, which would be renewed and discharged from time to time, we can not perceive any ground of principle or policy, upon which to rest the doctrine that notice of each successive transaction, as it arose, should be given. All that could be required would be, that when all the transactions between the plaintiffs and. Haring under the guarantee were closed, notice of the amount for which the guarantors were held responsible, should, within a reasonable time afterward, be communicated to them. And if the instruction had asked nothing more than this, we are of opinion, upon principle, as well as upon the authority of Russell v. Clark’s Executors, 7 Cranch, 69, and Edmonston v. Drake, 5 Peters, 624, that it ought to have been given. See Oxley v. Young, 2 H. Bl. 613; Peel v. Tatlock, 1 Bos. & Pull. 419.” And as to the third proposition," it was held that it should have been given to the jury, the court saying: “ By the very terms of this guarantee, as well as by the general principles of law, the guarantors are only collaterally liable upon the failure of the principal debtor to pay the debt.' A demand upon him, and a failure on his part to perform his engagement are indispensable to constitute a casus foederis. The creditors are not indeed bound to institute any legal proceedings against the debtor, but they are required to use reasonable diligence to make demand, and give notice of non payment.”
The first of these propositions, that as to notice of the ac *278 ceptance of the guaranty, was afterward in the case of Lee v. Dick, 10 Peters, 482, 495, applied to a guaranty of a single transaction, and referring to the cases of Russell v. Clark, and Douglass v. Reynolds, it was said to be “ unnecessary, after such clear and decided authority in this court on this point? to fortify it by additional adjudications. We are not aware of any conflict of decisions on this point; and if there are, we see no reason for departing from a doctrine so long and so fully settled in this court.” And in the case of Adams v. Jones, 12 Peters, 207, 213, the question is stated: “ Whether upon a letter of guaranty addressed to a particular person, or to persons generally, for a future ‘ credit to be given to the party in whose favor the guaranty is drawn, notice is necessary to be. given to the guarantor, that the person, giving the credit, has accepted or acted upon the guaranty, and given the credit on the faith of it?” — and it was. said, “ We are all of opinion that it is necessary; and that this is not now an open question in this court, after the decisions which have been made in Russell v. Clark, 7 Cranch, 69; Edmonston v, Drake, 5 Peters, 624; Douglass v. Reynolds, 7 Peters, 113; Lee v. Dick, 10 Peters, 482; and again recognized at the present term, in the case of Reynolds v. Douglass. It is in itself a reasonable rule, enabling the guarantor to know the nature and extent of his liability; to exercise due vigilance in guarding himself against losses, which might otherwise be unknown to him; and to avail himself of the appropriate means in law and equity, to compel the other parties to discharge him from future responsibility. The reason applies with still greater force to cases of a general letter of guaranty; for it might otherwise be impracticable for the guarantor to know to whom, and under what circumstances, the guaranty attached, and to what period it might be protracted. Transactions between other parties, to a great extent, might from time to time exist, in which credits might be given, and payments might be made, the existence and due appropriation of which might materially affect ais own rights and security. If, therefore, the question 'were entirely new, we should not be disposed to hold a differ *279 ent doctrine; and we think the English decisions are in entire conformity with'our own.”
• It is manifest that the rule thus laid down, as shown by the statement of it, and the reasons for it, was regarded as belonging to the doctrine of notice, to the right or duty of a party under a contract to receive or give notice, and not as a rule of construction, bearing on the question of the inception of a contract. It appears to have been considered, as said in the case of Tuckerman v. French, 7 Greenleaf, 115, 116, as an implied condition in the guaranty, that notice should be given of its acceptance. But in the most recent case on the subject in the supreme court of the United States, The Louisville Manf. Co. v. Welch, 10 Howard, 461, 475, the court, speaking of notice of the acceptance of a guaranty, “ and of the intention of the party to act under it,” say: “ The rule, requiring this notice within a reasonable time after the acceptance, is absolute and imperative in this court, according to all the cases; it is deemed essential to an inceptióú of the contract.”
The expression “ of the intention to act under it,” in connection with the idea that the notice, “is essential to the inception of the contract,” will be noted. For it would be singular, if the notice of the acceptance of the guaranty, should be essential to the inception of the contract, and yet be subsequent to that which is the performance of the contract on the part of the guarantee, and constitutes its consideration. It will also be observed, that in some of the former cases the-first proposition as to notice of acceptance seems not to be distinguished from the second proposition, as to notice of advances made under the guaranty, but they apparently run into each other. The case of Russell v. Clark, 7 Cranch, 69-91, is cited as the earliest authority in the supreme court of the United States for both propositions. In that case, what was claimed to be a guaranty or letters of credit being under consideration, it was said by Marshall, C. J.: “ The court can not consider these letters as constituting a contract by which Ulark and Nightingale undertook to render themselves liable for the engagements of Robert Murray & Co. to Nathaniel Russell. Had it been such a contract, it would certainly have *280 been the duty of the plaintiff to have given immediate notice to the defendants of the extent of his engagements.” The same judge in the case of Edmonston v. Drake, 5 Peters, 624, 637, speaking of a letter of credit, said: “ It would indeed be an extraordinary departure from that exactness and precision which peculiarly distinguish commercial transactions, which is an important principle in the law and usage of merchants, if a merchant should act on the letter of this character, and hold the writer responsible, without giving notice to him that he had acted on it. The authorities quoted at the bar, on this point, unquestionably establish this principle.” The authorities cited at the bar, as shown by the reporter, were, 1 Mason’s Rep. 340; 7 Cranch, 91, 92; 1 Atk. 91; 2 Bro. C. 0. 579; 2 Ves., jr. 540; 8 Mer. 272;' 2 John’s Ch. C. 544.
“ The exactness and precision which peculiarly distinguish mercantile transactions,” and not the necessity for reciprocity of assent in a contract, was the idea in the mind of the chief justice. And it may be observed in passing, that could the rule he sanctioned be limited to merchants who are, or ought to'be, exact and precise in their transactions, it might be a very proper one; but there can not be one rule of law for such merchants, and another for ordinary men, who may have occasion to give or require guaranties — to the farmer, for example, who gives credit to the purchaser of his produce on the guaranty of a merchant. If, as to such men, to make a guaranty effectual, the three notices shown by the propositions in the case of Douglass v. Reynolds, were required, it would, in the language of the judge who decided that case, in an elaborate statement and re-examination of the doctrine he had aided so much to establish, “ throw such arduous duties on the guarantee (as I desire to call the party accepting the guaranty), as would materially tend to impair the utility and convenience of that instrument.” Wilder v. Savage, 1 Story R. 22-32.
In a statement of the doctrine in that case, the judge goes beyond notice of an intention to act on the guaranty, and appears to require consent, while his own language in Doug *281 lass v. Reynolds, was, “ means to give credit on the footing ” of the guaranty. He says, “ I admit, that upon every guaranty for future advances, it is the duty of the party making the advances, to give notice to the guarantor of his acceptance thereof, and of his consent to act under the guaranty and to make the advances.” It is true, in a subsequent part of his opinion, the judge, in deciding that there is no general rule requiring notice of advances under a guaranty, and that the apparent requisition of such notice in Cremer v. Higginson, 1 Mason, 323, and Douglass v. Reynolds, is to be attributed to the particular circumstances of those cases, says : “All that I have supposed to be generally required of the person making the advances or giving the credit, after having given due notice of his acceptance and intention to act upon the guaranty, is, to make a demand upon the debtor, when the credit has expired, or the amount .has become due, and upon his default to give notice thereof within a reasonable time afterward to the guarantor.” 1 Story Rep. 32.
It is not necessary to comment on the numerous cases in the state courts following the decisions in those of the United States, which discuss the doctrine as to notice of acceptance of a guaranty. The same uncertainty as to the principle on which the doctrine rests — as to the purpose and extent of the notice required — will be found to exist; and it may be added, that there is also uncertainty as to what, in point of time, would be regarded a reasonable notice, and what circumstances would dispense with the necessity for notice. Compare Crafts v. Isham, 13 Conn. 28, with New Haven Co. Bank v. Mitchell, 15 Conn. 206; Bushnell v. Church, Id. 406, and White v. Reed, Id. 457; Train v. Jones, 11 Verm. 444, and Oaks v. Weller, 13 Verm. 106, with Oaks v. Weller, 16 Verm. 63; Lowry v. Adams, 22 Verm. 160, and Noyes v. Nichols, 28 Verm. 159; Babcock v. Bryant, 12 Pick. 133, and Mussey v. Raynor, 22 Pick. 223, with Allen v. Pike, 3 Cush. 238; Norton v. Eastman, 4 Greenl. 521, and Tuckerman v. French, 7 Greenl. 115, with Howe v. Nickels, 22 Maine, 175; and see also, Woodstock Bank v. Downer, 27 Verm. 543; Beebe v. *282 Dudley, 6 Foster, 249; M'Dougal v. Calef, 34 N. H. 535; Walker v. Forbes, 25 Ala. 139; Fay v. Hall, Id. 704.
In view of this uncertainty, it might well be questioned whether the doctrine was founded in correct principle, and adopted by the courts of the United States on a careful consideration of the authorities which they recognized as evidence of the rules of law. Accordingly, we find that in the most commercial state of the Union, all of the propositions in Douglass v. Reynolds have been denied to be law. In the case of Douglass v. Howland, 24 Wend. 35-49, the subject was discussed, and the authorities examined by Cowen, J., and he there says: “ I am aware that there are a class of cases which hold that, under a contract guaranteeing a debt yet to-be made by another, the guarantor is not liable to a suit without notice that the guaranty has been accepted and acted upon. Indeed they go farther: if notice of accepting the guaranty be not given within a reasonable time, no debt whatever arises. Babcock v. Bryant, 12 Pick. 133. I will only say, that these cases have no foundation in English jurisprudence, where the adjudications are numerous and clear the other way.” He then cites and comments on a number of English cases, and proceeds : “ I forbear to search farther for the English law, after the admission implied by Douglass v. Reynolds, 7 Peters, 113, 125. The question was there examined by Mr. Justice Story. The only English cases cited by him, are Oxley v. Young, 2 H. Bl. 613, and Peel v. Tatlock, 1 Bos. & Pull. 419, * * *. In Oxley v. Young, the surety was holden liable; and I do not find any countenance given to the idea, that notice was necessary by way of condition. The defendant ordered goods for another, and guaranteed that he should pay for them. They were accordingly shipped to him by the plaintiff, the guarantee. It is true, that notice of the shipment was given to the defendant; and he sought to raise a defense, on the subsequent neglect of the vendor. Eyre, C.J., said, the right to sue on the guaranty attached when the order was put in a train for execution, subject to its being actually executed; and the right could not be divested, even by the willful neglect of the *283 vendor. As to Peel v. Tatlock, it has been impossible for me to perceive that even an intimation was intended of notice being essential. The difficulty felt by Eyre, C.J., seems to have been, whether the creditor had not defrauded the guarantor by industrious concealment. I may then, I think, repeat with great confidence, that all the cases requiring notice are American, and depart from the rule of the common law. Douglass v. Reynolds, as Mr. Justice Story .observed, may be sustained by the dictum of Chief Justice Marshall (Russell v. Clark, 7 Cranch, 92), and indeed by Edmonston v. Drake, 5 Pet. 624, where the court, with that learned chief justice at its head, carried the dictum into a direct adjudication. No English case is claimed by Mr. Justice' Story, in any of his decisions, as sustaining the doctrine in the least. C. J. Marshall does not even cite one, in his opinions.”
By referring to the quotation before made from Edmonston v. Drake, 5 Peters, 624, 637, it may not be entirely correct to say, that 0. J. Marshall does not cite an English case, he adopts the authorities quoted by counsel as unquestionably establishing the principle, and among those authorities are several English cases. The cases of Nisbet v. Smith, 2 Bro. C. C. 579, and Rees v. Barrington, 2 Ves., jr. 540, two of those cited are not cases of guarantors, but of sureties on bond, claimed to have been discharged by change of contract, or by giving of time. The case of Samuel v. Howarth, 3 Merivale, 272, another case cited, is the case of a guarantor, but he claimed to be discharged as a surety by the giving of time to the principal debtor. It is highly probable from the statement of the case, that there was no notice of the acceptance of the guaranty, of the advances under it, or of the default of the principal debtor, until after his bankruptcy, but no point was made on either of those grounds. A case is also cited from 1 Atk. 91, but the case there found has no manner of application, nor any case we have been able to find in that volume.
The ease of Skip v. Huey, 3 Atk. 91, was undoubtedly the one intended, and, like two of the others, is that of a surety *284 on a bond, against whom relief was denied, there having been a change of securities and an extension of time. It is quite clear that neither of these cases sustain the rule adopted in Edmonston v. Drake, and that case must stand in point of authority upon the American cases cited, which were Cremer v. Higginson, and Russell v. Clark, in neither of which were any authorities cited. A case was also cited from 2 Johns. Ch. R. 544, the case intended, as may be inferred upon the rule of noscitur a soeiis, was King v. Baldwin, Id. 554, that being also the case of a surety on a note discharged by the giving of time.
We have carefully examined the cases of Oxley v. Young, 2 H. Bl. 613, and Peel v. Tatlock, 1 Bos. & Pull. 419, and can not see how the fairness and correctness of the comment upon them of Cowen, J., before quoted, can be denied or disputed. If there be English cases sustaining the doctrine of Douglass v. Reynolds, they have not been cited in the decisions of the courts of the United States. In several of the cases decided in the state courts, English cases are cited. In Craft v. Isham, 13 Conn. 28, 39, which, though decided before Douglass v. Howland, had not been reported, and is therefore not, referred to by Cowen, J., it is said, as to the decisions in Douglas v. Reynolds, and Adams v. Jones, that, “ so far from being opposed to, or unsupported by, authorities, they are founded on principles which have long since been settled, and are familiar in Westminster-Hall. We barely refer to the authorities.” The cases cited are, McIver v. Richardson, 1 Maul. & Sel. 557; Gaunt v. Hill, 1 Stark. Ca. 10; Symons v. Want, 2 Stark. Ca. 371; Payne v. Ives, 3 Dowl. & Ry. 664; Glyn v. Hertel, 8 Taunt. 208; Bacon v. Chesney, 1 Stark. Ca. 192; Combe v. Wolf, 8 Bing. 156; Phillips v. Astling, 2 Taunt. 206; Morris v. Cleasby, 4 Maul. & Sel. 566.
The bearing on the point of some of these cases, it is difficult to perceive. Bacon v. Chesney, was the case of a guaranty for goods to be sold on eighteen months credit, and it was claimed that there had been a credit of only twelve, but it being shown there was a mistake, the plaintiff recovered. *285 In Ooombe v. Woolf, the guarantor was held to be discharged by the giving time without his consent. In Phillips v. Astling, the guaranty was of the price'of goods to be paid by a'bill, and the question was as to notice of its non-payment. In Morris v. Cleasby, there had been a sale by a factor on a del credere commission. It was said such a commission presupposes a guaranty, and that the obligation of the factor arises on the guaranty. “ The guarantor is to answer for the solvency of the vendee, and to pay the money, if the vendee does not; on the failure of the vendee he is to stand in his place, and to make his default good. Where the form of the action makes it necessary to declare upon the guaranty, application to the principal must be stated on the record. In all cases it must, if required, be proved, though in the case of a foreigner, very slight evidence may be sufficient.” 4 M. & S. 574.
It will be seen that in none of these cases is there anything as to the acceptance of a guaranty, and so far as any of them bear on the doctrine of notice, it is the duty of notice imposed by the contract, and that in reference to a collateral liability for the payment of a bill of exchange. 2 Taunt. 206. It was this duty of notice to which the reasoning of Cowen, J., in Douglass v. Howland, was directed, when he says: “The short answer which the English cases, decided long before our revolution, furnish, is, that the guarantor, by im quiring of his principal, with whom he is presumed to be on intimate terms, may inform himself perfectly, whether the guaranty were accepted, the conditions, fulfilled and payment made. Where that can be done, the cases all hold that notice is not necessary, even as preliminary to the bringing of an action, much less to found a right of action. The only exception is the well known one of collateral parties to bills of exchange and promissory notes.” Vide Phillips v. Astling, 2 Taunt. 206. It is evident that the necessity for reciprocity of assent in a contract, as the ground on which notice of the acceptance of a guaranty was required, had not then been claimed in any case, or it had not come under the notice of the judge. Now, after the declaration in the case cited from *286 10 Howard, 475, it may properly be regarded as the only-ground. It is the only one taken in the more recent cases in the state courts. Kellogg v. Stockton, 29 Pa. St. 460; Cahuzac v. Samini, 29 Ala. 288; Lowe v. Beckwith, 14 B. Monroe, 184; Allen v. Pike, 3 Cush. 231; Howe v. Nickels, 22 Maine, 175, and White v. Reed, 15 Conn. 457.
The other cases cited in Crafts v. Isham, bear on that view of the question, but before proceeding to an examination of them, it may be observed, that the general application of the doctrine of notice to guaranties of future credit or advances, appears quite clearly to be contrary to the authorities, and the resort to a different ground became necessary. Authorities in addition to those cited in Douglass v. Howland, will be found collected in a 'note in 2 American Leading Cases, 57, 'which contains an able and thorough investigation of the whole subject.
It is said, in a modern work on contracts, “ Care must be taken in all cases to mark the distinction between a consummate and perfect guarantee, and a mere proposal, or offer, or tender of a guarantee, which must be accepted, and the acceptance notified to the maker, and his final assent to the engagement be obtained, ere it can become a perfect and conclusive contract.” Addison on Contracts, 113. The first case cited-to show this distinction is M’Iver v. Richardson, 1 M. & S. 557; one of the cases cited in Crafts v. Isham, and of which it was said by Wilde, J., in Allen v. Pike, 3 Cush. 241, that it was the leading case on the point of notice of acceptance of a guaranty of future credit or advances. He states the decision, says it has been followed by numerous similar ones in this country, naming Adams v. Jones, 12 Pet. 213; Eaton v. Tiffany, 2 Har. & Gill, 22; Norton v. Eastman, 4 Greenl. 821; Tuckerman v. French, 7 Greenl., 115, and Beekman v. Hale, 17 Johns. 134; and that “ The distinction is between an offer to guaranty a debt -about to be created, the amount of which the party making the offer does not know, and it is uncertain whether the offer will be accepted, so that he may be ultimately liable; and the case of an absolute guaranty, the terms of which are definite as to its amount and extent. In *287 the latter case no notice is necessary to the guarantor; whereas, in the former case the contract is not completed until the offer is accepted.”
An examination of M’Iver v. Richardson will show that no point was made, that a debt was about to be created; that the amount of the debt was unknown, or that it was uncertain whether the guaranty would be acted on, or that the terms were indefinite. The decision turned on the question, whether the writing imported a guaranty or only an offer to guaranty. The guaranty in M’Iver v. Richardson was in these words: “ I understand A. & Co. have given you an order for rigging, etc., which will amount to about four thousand pounds, I can assure you, from what I know of A.’s honor and probity, you will be perfectly safe in crediting them to that amount; indeed I have no objection to guaranty you against any loss from giving them this credit.” It was claimed by one of the counsel, Brougham, that the paper did not of itself import a guaranty, and at the utmost amounted only to a tender of a guaranty which had never been accepted. This, it was admitted in reply, was the question. The court said that the question was, “whether the paper imports to be a perfect and conclusive guaranty, or only a proposition tending to. a guaranty. The paper, therefore, must be construed according to the plain natural import of its terms. The import is, that the party signing it understood that A. & Co. had given an order for goods amounting to about 40001; that this order remained unexecuted; and then, as if a question had been put to the' defendant respecting the honor or probity of A. & Co., the defendant says: I can assure you from what I know of A., you will be perfectly safe in crediting them.to that amount; and then he adds, indeed, I have no objection to guaranty you against any loss from giving them this credit: which words-import, that if application were made he would guaranty. * * * Considering this as a mere overture to guaranty, it appears to us that the defendant ought to have had notice that it was so regarded, and meant to be accepted, or that there should-have been a subsequent assent on his part to convert it into a, conclusive guaranty.” 1 M. & S., 563.
*288 In the case of Symmons v. Want, the terms of the letter were, “I have no objection to guaranty the payment of the rent, as far as that of each quarter, during Mr. T. Want’s continuance in possession.” The second point made by counsel was : “ That the terms ‘ I have no objection to guaranty,’ did not amount to a guaranty, in the absence of a request to guarantee, or of an acceptance of the offer to guarantee, and he cited M'Iver v. Richardson.” Holroyd, J., having called upon the counsel for the plaintiff to answer the second objection, and the answer not being satisfactory, directed a non-suit, on the ground that the doctrine laid down in M'Iver v. Richardson, was applicable to the case. 2 Stark. Ca. 373, 374.
It is proper to notice in this connection, another case, though not one of those cited in Crafts v. Isham. In Mozley v. Tinkler, 1 C. M. R. 692, the writing was this : “ E. informs me, that you are about publishing an arithmetic for him. I have no objection to being answerable as far as 502.; for my reference apply to B.” It was said by Parke, B.: u It is not necessary in a contract of this nature that both parties should be bound; it is sufficient if the party sued is shown to be liable. If the guaranty had stopped at the words “ 50h,” I should still have been inclined to think, on the authority of McIver v. Richardson, that the plaintiffs ought to have given notice to the defendant, that they had accepted his guaranty. But the subsequent words render the point quite clear, that the defendant only intended to be bound by the instrument, in case, upon inquiry, the plaintiffs should be satisfied with regard to his solvency.” 1 C. M. R. Exch. 696.
In each of these cases we find the court scanning and construing the language, to ascertain whether there was an absolute guaranty, or a mere offer to guaranty, requiring assent. The inference, therefrom, is very strong, that there was no rule known to those judges, that in every case of a guaranty of future credit or advances, there must be other evidence of acceptance, than acting on the guaranty.
The case of Payne v. Ives, does not appear to have been decided on the authority of M'Iver v. Richardson, but on its *289 own circumstances, which were peculiar. The instrument was “ We undertake, to indorse any bill or bills S. may give P. & Co., in part payment of our order for lace, which is now being executed for him; P. & Co. to allow hi. per cent, on the amount of said bills for said guaranty.” No application was made for the indorsement of the bill given until more than seventeen months after its date, the vendee having then become insolvent, and it was held that the application had not been made in due time. _ Here the instrument provided for an act to be done, other than acting on the guaranty, the paying the commission. The decision was made on that point, and nothing was said as to any other acceptance of the guaranty. The plaintiffs, said Holroyd, J., “ had an option to make the agreement binding by paying the commission, but they did not exercise that option till within a few days of the bill becoming due, and till they knew of the insolvency of the acceptor. I think they were not justified in that delay, and that is the only question in the cause.” 3 D. and R., 668. The case of Glyn v. Hertel turned on the construction of the-guaranty, whether it applied to future loans or to the cancellation of securities which had been given for an existing indebtedness. The guaranty had been given on the direct application of the plaintiffs, and nothing was or could well have been said as to their acceptance of it. It is difficult to understand in what view the case of Gaunt v. Hill could be regarded as sustaining the decision in Douglass v. Reynolds, or in Crafts v. Isham. The letter sued, on was as follows: “ That it may not be said that I have made no effort to save my brother from prison, I wish to know if you will give him a full discharge if I will pay one moiety of his debt. I have specified what I will pay and no more ; if you accept this, call upon me to-morrow morning.” The letter applied to an existing debt, required an acceptance of one half in discharge of ■ the whole, and, as said by Lord Ellenborough, “ was a mere proposition to pay a moiety, reserving a power to do anything or nothing as he pleased the next day.” 1 Stark. Ca. 11.
It would be doing injustice to the courts which have held notice of the acceptance of a guaranty of future credit or ad *290 vanees to be necessary, to suppose that they intended to deny, as a general proposition, that “ if a promise be made by one man to pay, if another will perform, a silent performance will give a right to payment,” or, “ the existence of obligations which acquire their validity from future action and not from immediate assent.” 2 Am. Lead. Gas. (4th Ed.) 96-97. The tenor of those decisions appears to be, that in guaranties of future credit or advances, there is to be implied a condition that notice of acceptance should be given, or, that from the indefinite character of such guaranties a rule of construction must «be applied (and that without reference to the language used), by which they are to be held as mere offers or propositions to guaranty, and therefore requiring assent; and the latter is the ground now generally assumed. It certainly is not supported by the English decisions which have been noticed, and the English precedents and decisions in cases where' the point might have been presented, and various remarks of English judges, go far to sustain the statement, “ that English authorities present no trace of the doctrine.” 2 Am. Lead. Gas. 97.
' In the case of Kennaway v. Treleavan, S. M. & W. 498, 501, it was said by Parke, B.: “A great number of the cases are of contracts not binding on both sides at the time when made, and in which the whole duty to be performed rests with one of the contracting parties. A guaranty falls under that class; when a person says — ‘ In case you chose to employ this man as your agent for a week, I will be responsible for all such sums he shall receive during that time, and neglect to pay over to you,’ — the party indemnified is not therefore bound to employ the person designated by the guaranty, but if he do employ him, then the guaranty attaches and becomes binding on the party who gave it.” In the case of Mills v. Blackall, 11 Q. B. 358, 364, it was said by Patteson, J.: “ The mutuality of obligation is not a sound criterion. In a contract of guaranty for further advances to a third person, the plaintiff is not always bound to make the advances; but the duty to see him harmless arises upon the advances being made.” And by Wightman, J., in the same case, the “ objection that -there is no mutual liability, would be of great weight, if the *291 ■action were brought for non-performance of an executory agreement. But here the agreement has been performed on one side. Many instances may be put of a liability which does not arise at the moment of making the contract, as in the case mentioned, of a guaranty where the party to whom the guaranty is given is not bound to make the advance.” In the case of Power v. Fowler, 4 Q. B. 511, 517, Lord Campbell speaks of “ a long series of cases, beginning with Stadt v. Lill, 9 East. 348, in which promises in writing, made before goods are supplied, that if the goods are supplied to a third person they shall be paid for, have been held binding after the goods are supplied.”
We have examined some of those cases, in which the guaranty being indefinite as to the amount and time of the advances, something might be expected in the pleadings, or points made, as to notice of the acceptance of the guaranty, but nothing of the kind appears. Johnston v. Nichols, 1 C. B. 251; Chapman v. Sutton, 2 Id. 634; Boyd v. Moyle, Id. 644; Martin v. Wright, 6 Q. B. 917; Bell v. W. P. Bank of England, 9 C. B. 154; Harlor v. Carpenter, 3 J. Scott, 172; Hitchcock v. Humfrey, 5 M. & Gr. 559; Mayer v. Isaac, 6 M. & W. 605; Liverpool Borough Bank v. Eccles, 4 H. & N. Exch. 139; Allan v. Kenning, 9 Bingh. 618.
In the case of White v. Woodward, 5 C. B. 810, 814, it was claimed by counsel that “ the declaration should have averred notice to the defendant within a reasonable time after the supply of the goods.” He said this question was first broached in Peel v. Tatlock, 1 B. & P. 419, and notice held necessary by Dr. Story in Cremer v. Higginson, 1 Mason, 323, and 1 Story R. 22, 33. Cresswell, J., said, “ Suppose the defendant had no notice of the supply to Slaiter, and no notice of the non-payment by him, until the amount was demanded of him. What then? ” The counsel replied: “ The demand if within a reasonable time would be notice.” Wilde, C.J., “You do not show that it was not within a reasonable time. The defendant was liable ipso facto, upon Slater’s failure ta pay.” Such is the only mention of the doctrine as to notice *292 of acting on a guaranty, we have been able to find in the English reports.
Our examinations into the decisions which have been cited as showing, that the doctrine of Douglass v. Reynolds was a common law doctrine, imposing no new burden on those using a well-known mercantile instrument, has been minute and particular, both on account of the importance of the question, and the fact that there has been a' previous decision in this state on the subject.
In the case of Taylor v. Wetmore, 10 (Ohio Rep. 490, the court, having decided the case on the ground that there was no contract with the plaintiffs, the letter of credit not having been addressed to them, but to another firm, say, that though this point is decisive, another question is made, which may as well be settled. The court then express an opinion, on the authority of the cases of Russell v. Clark and Adams v. Jones, which, as stated in syllabus, is, that “where a bill of goods is taken upon the faith of a letter of credit, notice of it must be given at once to the guarantor.” We are aware of the importance of adhering to former decisions, but do not think we are bound by an opinion which it was not necessary to express, and evidently was expressed without a thorough consideration of the question.. It is moreover a single case. (Gifford v. Livingston, 2 Denio, 380, 394, n.) It involves no rule of property, and, if followed, would impose the duty of giving notice in a business transaction, required neither by the doctrine of the common law on the subject, nor by wise policy.
A regard for uniformity of decisions, strongly inclines us to yield to the authority of cases decided by the supreme court of the United States. But we can not do so when satisfied that a rule has been adopted, as a rule of the common law, as to which there is, not a conflict among those authorities recognized as evidence of that law, but an absence of authority. It is also to be observed, that the state with which our commercial relations are the most important, from the beginning rejected that rule, and after full consideration adheres to that rejection. Union Bank v. Coster, 3 Comst. 203. *293 It has also been rejected or doubted in other states. F. & M. Bank v. Kercheval, 2 Mich. 504; Bright v. McKnight, 1 Sneed, 158; Yancey v. Brown, 3 Sneed, 89; Jackson v. Yandes, 7 Blackf. 526; Caton v. Shaw, 2 Har. & Gill, 13; Moore v. Holt, 10 Gratt. 284.
In another state, which has sustained the rule by several decisions, a strong intimation has recently been given that it is erroneous. In the case of Paige v. Parker, 8 Gray, 211, 213, it is said: “ On this point, a distinction which is sometimes overlooked, is to be taken between a guaranty and an offer of a guaranty. In the case of an offer of a guaranty, as in the case of any other offer or proposal, an acceptance thereof, seasonably made known to the party offering, is necessary to the completion of the contract. But express notice of the acceptance of an absolute guaranty is not always, if ever, necessary for the purpose of binding the guarantor. In the state of New York, the courts hold that no notice of acceptance is necessary, when the guaranty is absolute.”
The distinction thus pointed out is the one sustained by the authorities we have examined, and the question whether an instrument be an absolute guaranty, or a mere offer to guaranty, depends upon a fair construction of its terms. Applying this rule, and rejecting that which would make every undertaking to be responsible for a credit to be given to a third person, a mere offer or proposal to guaranty, it is scarcely necessary to say, that the instrument sued on in this case, is an absolute guaranty.
There are two grounds of demurrer to the petition, which remain to be noticed: 1. A misjoinder of causes of action. And, 2. A misjoinder of parties defendant. If Moellar be jointly liable with the defendant, Bumcratz, there is, of course, no misjoinder of causes of action. If the parties be severally liable on the obligation, then the code, section 38, provides that they may be included in the same action. If, as argued, Moeller be not liable at all on the instrument, then he may have been improperly sued, but that does not concern the defendant, Bumcratz. The code allows a demurrer only for a defect of parties, section 87, and one party can not demur be *294 ■cause another has been improperly joined with him as a defendant.
Being of opinion, for the reasons which have been stated, that the petition shows a cause of action against the defendant, Bumcratz, and that the court of common pleas erred in sustaining his demurrer, and rendering judgment against the plaintiff, and that the district court erred in affirming that judgment, the judgment of the district court will he reversed, .and rendering the judgment which should have been rendered by that court, the judgment of the common pleas will be reversed and the ease remanded to that court for further proceedings.
Judgment reversed.
Scott O.J., and Sutliee, Peck and Brinkerhoee, J J., concurred.