# Kincheloe *vs* Holmes, Sturgeon & Co.

### ERROR TO THE MUHLENBURG CIRCUIT.

### *Guaranty.   Notice.   Diligence by suit.*

JUDGE MARSHALL delivered the opinion of the Court.

COVENANT.

7m   5
a102 172
*Case 3.* a102 173
7bm  5
·103 515

*September* 14.

THIS action of covenant was brought by Holmes, Sturgeon & Co., merchants of Philadelphia, upon a letter of guaranty, addressed by Wm. Kincheloe to Thomas C. Rockhill & Co., of Philadelphia.

The letter, bearing date Sept. 13th, 1841, introduces John O'Brian, of the firm of Kincheloe & O'Brian, as visiting Philadelphia for the purpose of purchasing goods, and proceeds as follows : "They are entirely solvent, and doing good business. I will guarantee any debts of theirs. Any friendship you may show Mr. O'Brian, in selling him goods, or introducing him to merchants in your city, will be thankfully received by him, and I will be responsible for any contracts growing out of such introduction. I expect to be in your city next spring." The writer then expresses his regret that his son William, (the same who was a member of the firm of Kincheloe & O'Brian,) had failed in some contract with T. C. Rockhill & Co., and says : "I will give good cash notes, due Christmas next, with a discount of five per cent., for what he owes you, and for all he owes in Philadelphia. No man will ever lose by any of my sons whilst I am able to sustain them. I know their intentions are pure, &c."

The defendant filed a demurrer to the declaration, and at the same time, five pleas, the third and fifth of these denying that O'Brian was introduced to the plaintiffs by T. C. Rockhill & Co., were adjudged bad on demurrer; and

Case stated.

The bill of guaranty.

The pleadings.

KINCHELOE
*vs*
HOLMES, &c.

upon the other three, denying that the plaintiffs sold the goods, &c. on the faith of the guaranty, or that they relied on it, &c.; and also denying that the debt had been demanded of the defendant, issues were formed and found for the plaintiffs.

The demurrers to the declaration, and the two pleas, (third and fifth,) present all the questions which need be considered by this Court.

*The construc-*
*tion of the letter*
*of guaranty.*

The letter of the defendant was obviously intended as a guaranty, not only to Rockhill & Co., to whom it was addressed, but to any other merchants of Philadelphia, who on the faith of it should sell goods to O'Brian at that time, and for the firm of Kincheloe & O'Brian. Nor was it necessary, in order to entitle them to the benefit of the guaranty, that O'Brian should be actually introduced to them by Rockhill & Co. It was sufficient, if upon his reference, the letter was shown to them, or a copy furnished by Rockhill & Co., or by their authority. The pleas third and and fifth, denying an introduction by Rockhill & Co., were therefore properly adjudged bad.

*To authorize a*
*recovery upon a*
*general letter of*
*guaranty, it is*
*necessary that*
*the plaintiff not*
*only aver that*
*the guaranty was*
*accepted, the*
*credit given up-*
*on the faith of*
*the guaranty, but*
*that the guaran-*
*tor was notified*
*in a reasonable*
*time, of the cred-*
*it given, its ex-*
*tent, and terms,*
*and that the*
*guarantor would*
*be looked to*
*for performance*
*thereof.*

But the question might have been made on the demurrer to these pleas, and it arises directly on the demurrer to the declaration, whether upon the facts therein stated, the plaintiffs have shown themselves entitled to sue upon the guaranty. This question has been argued with reference to two objections made to the declaration. The first is, that it no where avers that the defendant was notified of the acceptance of his guaranty by the plaintiffs, or of their having acted on it by selling goods on the faith of it, or of the amount of goods sold, and the credit given. The second is, that there is no sufficient averment of due diligence in demanding or coercing payment from the primary debtors, or of notice of their failure to pay. It is contended on the part of the plaintiffs, that this is an absolute and unconditional guaranty; *that the mere* fact of the plaintiff's having sold the goods on the faith of it, is an acceptance, and binds the guarantor without *further act or notice on their part; that they were not* bound to any particular diligence against the primary debtor, but only to a reasonable effort to make the debt; *that this is shown by their ineffectual suit, brought against*

the purchasers of the goods; and that the averment, that before the present suit was brought, the defendant had due notice of the failure of the principal debtors to pay, and the debt was demanded of him, is sufficient.

By the nature of this action, and the terms of the declaration, the guaranty of the defendant, though contained in a letter to Rockhill & Co., and not addressed particularly to the plaintiffs, is treated as a contract with them. When did the guaranty, which was originally a mere offer made to the merchants of Philadelphia generally, or at least to such as should be applied to for credit by O'Brian on the faith of its promise, become a contract between the plaintiffs and the defendant? Must not that mutual assent of the parties which is necessary to constitute an agreement or contract between them, be evidenced by some external act, or at least by some fact tending to show the assent? Must not this fact be of such a nature as to convey to each a knowledge of the assent of the other? And is the mere fact of selling goods in a distant city to a person having a letter of guaranty, which may or may not have been shown or relied on, a fact of this nature? Or rather may it be asked, is the fact that the party has given to another a general letter of guaranty which may be acted on, sufficient evidence to him that it has been acted on by any particular person? It is true, the assent of the guarantor is sufficiently evidenced by his letter offering to guaranty any debt which the bearer may contract, &c., and he cannot retract his offer after it has been properly acted on. If he says he will guaranty the payment of a particular subsisting debt, and his letter is addressed to the creditor, and retained by him, the bare omission to reject the offer might be sufficient evidence of its acceptance. But in the case of an offer to guaranty future transactions wholly undefined in extent, with persons not named and not known, and which may or may not take place, it seems to be required by the essential nature of a contract, that the guarantor should be informed of the fact that his guaranty has been accepted and acted on, and by whom, and that this information should be communicated to him at once, or at least that the party accepting the guaranty and intending to rely on

KINCHELOE
*vs*
HOLMES, &c.

it, should at once take the proper steps for communicating it. As it should not remain optional with him for any indefinite period, whether or not there is a contract between him and the guarantor. So, not only should the question of his acceptance of the guaranty and assent to the contract, be at once decided in his own mind, but his decision should be at once unequivocally manifested to the party whom he intends to hold bound, and for whose benefit alone an instantaneous decision is required.

But it is in a practical point of view, immaterial whether we say that no contract arises, unless the party intending to rely on the guaranty gives notice of that intention, or that the guarantor cannot be held responsible unless he has had due notice of the acceptance of his guaranty. It is immaterial whether the notice be essential as a prerequisite to the existence of the contract, or whether it is essential to its availability and enforcement. The object or end of the requisition in either case, is that the guarantor may know that he is bound, and to whom, in order that he may be enabled to take such measures for his own safety, as circumstances may require. It cannot be presumed that the maker of a general guaranty, referring to future and indefinite transactions, intends either to dispense with a timely knowledge of the existence and extent of such liabilities as he is willing to incur under the guaranty, or to impose upon himself the burthen of enquiry to ascertain what merchants in a large city may have acted upon it. From the nature of the thing to be notified, which is the act or intention of one of the parties, the duty of giving notice seems appropriately to devolve on him. As in other cases, the notice should be given at once; that is, in reasonable time, with a view to the accomplishment of the purpose for which it is required, and if given after the transaction based upon the guaranty has actually occurred, the notice should communicate the nature and extent of the transaction. All this seems to be required by that good faith and precision and promptness which characterize the principles and usages of the law merchant. And so far at least as regards the necessity of seasonable

notice of the acceptance of the ¡guaranty, the rule above stated is, as we think, fully sustained by authority.

In the case of *Adams* vs *Jones,* (12 *Peters' S. C. Rep.* 213,) Judge Story, after stating the ¡question to be, "whether upon a letter of guaranty, addressed to a particular person or persons generally, for a future credit to be given to the party in whose favor the guaranty is drawn, notice is necessary to be given to the guarantor, that the person giving the credit has accepted or acted on the guaranty, and given the credit on the faith of it," goes on to say, "we are all of opinion that it is necessary, and that this is not now an open question in this Court, after the decisions which have been made, in *Russell* vs *Clark,* (7 *Cranch,* 69;) *Edmondson* vs *Drake,* (5 *Peters,* 624;) *Douglas* vs *Reynolds,* (7 *Peters,* 113;) *Lee* vs *Dick,* (10 *Peters,* 482 ;) and again recognised at the present term, in the case of *Douglas* vs *Reynolds.*" And after demonstrating the entire reasonableness of the rule, he says, "If therefore, the question were entirely new, we should not be disposed to hold a different doctrine, and we think the English decisions are in entire conformity with our own."

Upon referring to the cases above cited, it will be found that while the letter of guaranty is in none of them more indefinite or comprehensive than in this case, it is in several instances decidedly less so. And yet in each of them the same doctrine of the necessity of giving notice of the acceptance of the guaranty, &c., is infalibly maintained. In *Douglas* vs *Reynolds,* (7 *Peters,* 125,) it is decided that the notice must be given in a reasonable time after acceptance of the guaranty, and in other cases the expression is due notice. But without any such express qualification of the rule, the requisition of notice implies that it shall be given in a reasonable time after the fact, so as to make it available to the party for the purposes for which it is required to be given.

In *Chitty on Contracts, p. 500, Note 1,* reference is made to many American cases, in which the doctrine laid down by the Supreme Court of the U. States, with respect to notice of the acceptance of a guaranty of a future and uncertain transaction is maintained. And we

have seen no opposing authority which brings the doc-trine into serious question. There is nothing in the terms of guaranty in this case, to take it out of the letter or principle of the rule. It relates to future and indefinite transactions with uncertain and unknown persons. Whether any such transactions would be made, and whether if made, it would be on the faith of the proposed guaranty, and to what extent, and by whom made, are matters of which the guarantor must, in the nature of things, be in the first instance entirely ignorant. The principle of the rule requires that he shall have notice, in order that he may protect his own interest. The expression in the letter, declaring that no one shall lose by any of the writer's sons while he is able to sustain them, is no part of the guaranty, and does not change its nature and extent. It is rather an expression of sentiment than of obligation. It is not as the declaration denominates it, a covenant. And if it were it would be limited by the reference to the ability of the covenantor, with regard to which there is no averment.

The declaration then, is in our opinion, fatally defective, in not averring notice that the guaranty was accepted, and credit given on the faith of it. The only notice averred is, of the total failure of Kincheloe & O'Brian to pay the debt. But as the declaration states the suit against Kincheloe & O'Brian, and the effort to make the judgment by executions, on which only a part was realised, and no other property was found, this averment is understood to refer to the failure of the remedy against the principals. And even if it be understood as implying a notice then given of the acceptance of the guaranty, the notice would have been too late. Nor indeed would it have been timely or seasonable, or due notice, if given only when the credit of six months alallowed to Kincheloe & O'Brien had expired. As plainly implied in the opinion delivered by Judge Story, (12 *Peters*, 213,) the notice should have been such as would have enabled him "to avail himself of the appropriate means in law or equity to compel the other parties to discharge him from future responsibility." And although the same strictness may not be required as in giving no-

*The guarantor is entitled to notice of the extent of liability which he was supposed to have incurred by the guaranty in a reasonable time after the credit given, to render him responsible.*

tice of a protest, still the notice must be reasonable with reference to the time of the acceptance and the extent of credit, and the purposes of the notice. We know of no rule but that it shall be given in convenient time after the acceptance, or at least after the transaction under the guaranty.

Upon the second objection we need only remark, that without due notice of the acceptance of the guaranty, no diligence in coercing the debt from the principal debtors, or in giving notice of their failure to pay could make the guarantor liable. But as due notice of the acceptance of the guaranty would have sufficed to put the guarantor on his guard, we are not prepared to decide that in case of such a guaranty as the present, the creditors after giving such notice, would be bound to use greater diligence in demanding or coercing payment from the principals, than a man of ordinary prudence would use in his own case, or that they were bound to give to the guarantor any particular notice of their proceedings in this respect, until they called upon him for payment.

If the plaintiffs had taken a bill of exchange, drawn by Kincheloe & O'Brian, for the price of the goods, they would probably have been bound to use that degree of diligence in its presentation which is prescribed by the mercantile law. But having taken a common promisory note, the same rule does not apply. And we cannot say that there has been any want of diligence against the principal debtors by which the guarantor if ever bound, has been discharged. If it appeared that any thing was lost by the failure to sue from March until September, 1842, the case might possibly be different. But no question arises as to that. But for the defect in the declaration above noticed, the demurrer should have been sustained.

Wherefore, the judgment is reversed and the cause remanded, with directions to sustain the demurrer to the declaration, and for further proceedings.

*Pirtle* for plaintiff; *Morehead & Reed* for defendants.

---

**Margin notes:**

KINCHELOE
*vs*
HOLMES, &c.

Without due notice of the acceptance of a guaranty, notice of diligence in pursuing the principal by suit giving notice of his failure to pay will not render the guarantor responsible.

—But after due notice of the acceptance, &c. of the guaranty, any particular notice of the proceedings against the principal, *may* not be necessary until payment be demanded, and a greater degree of diligence would not be required in pursuing the principal than a man of ordinary prudence would take in his own case.