## HANNAH NEWMAN

### v.

## STREATOR COAL COMPANY.

GUARANTY—NOTICE OF ACCEPTANCE.—Where the guaranty is a continuing guaranty of a future indebtedness, wholly uncertain and unlimited in amount and growing out of a series of transactions to be continued for an indefinite period of time, the guarantor is not bound, unless he is notified within a reasonable time that the party guaranteed has accepted the guaranty and is acting under it. *Held*, that the instrument in this case was such a guaranty, and that there was no notice of acceptance.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed June 9, 1886.

Messrs. MOSES, NEWMAN & REED, for appellant; that notice of the acceptance of the guaranty was necessary, cited Adams v. Jones, 12 Peters, 213 ; Cooke v. Orne, 37 Ill. 189; Brandt on Suretyship, 251, § 157.

The instrument sued on is not a continuing guaranty : Hayden v. Crane, 1 Lansing (N. Y.), 181 ; Gard v. Stevens, 12 Mich. 292 ; Whitney v. Groot, 24 Wend. 82 ; Baker v. Rand, 13 Barber (N. Y.), 125.

Messrs. FAIRCHILD & BLACKMAN, for appellee; that further notice was not necessary in this case, cited Cooke v. Orne, 37 Ill. 186 ; F. & M. Bk. v. Kercheval, 2 Mich. 504; Paige v. Parker, 8 Met. 211 ; Douglas v. Howland, 24 Wend. 35 ; Walker v. Forbes, 25 Ala. 147.

BAILEY, P. J.    This was an action of assumpsit brought by the Streator Coal Company against Hannah Newman, on the following contract of guaranty :

"CHICAGO, April 17, 1883.
" STREATOR COAL COMPANY, STREATOR, ILL.,
" *Gentlemen:*—I guarantee that your coal deal with Mr. S. Rosenfels will not result in a loss to your company.
"Respectfully, etc.,
"HANNAH NEWMAN."

It is undisputed that this guaranty was signed by the defendant at the request of Rosenfels, on or about the day of its date, and delivered by her to Rosenfels, who soon after delivered it to the plaintiff.   It also appears, without controversy, that no notice was given by the plaintiff to the defendant of the acceptance of said guaranty, or of any of the subsequent dealings between the plaintiff and Rosenfels, until after the service of summons in this suit, which took place June 7, 1884.

The testimony of but two witnesses—Alvin E. Tyler, the plaintiff's secretary and treasurer, and the defendant—was produced at the trial, Rosenfels being then dead.   It appears, from Tyler's testimony, that for some ten months prior to the

date of the guaranty Rosenfels, had been a customer of the plaintiff in the purchase of coal, under a contract or arrangement by which Rosenfels was to pay the plaintiff for the coal purchased each month on the 15th day of the month next following ; that a short time prior to the execution of the guaranty, Rosenfels being behind in his monthly payments, the plaintiff determined to sell him no more coal until he had arranged for the payment of his account and made the plaintiff safe for the future ; that such determination being communicated to Rosenfels, the latter proposed to give the plaintiff a guaranty, and suggested the defendant as guarantor, saying that he would get her to sign a paper guaranteeing the plaintiff against loss; that the witness, on behalf of the plaintiff, after making inquiries as to the responsibility of the defendant, and finding it satisfactory, made a draft in pencil of such guaranty as the plaintiff desired, which Rosenfels copied and took away, and afterward brought back with the defendant's signature thereon; that the plaintiff thereafter continued to sell coal to Rosenfels until about the last of December, 1883, and that his indebtedness for coal sold him during the months of October, November and December, 1883, amounting to $1,383.50, still remains unpaid.

It appears that in June, 1882, about the time or shortly before the dealings between the plaintiff and Rosenfels commenced, the plaintiff wrote Rosenfels a letter offering to sell him coal for a year at a certain uniform price, provided that the number of tons purchased should be no larger in winter than in the summer; but there is no evidence that such proposition was ever accepted by Rosenfels, or that any dealings were ever had by the parties under it, but the contract or arrangement under which the parties actually dealt, according to the testimony of witness Tyler, seems to have been made upon a different basis.

The defendant on her part testified, that said guaranty was brought to her by Rosenfels; that he told her that he was about to make a contract with the plaintiff for the purchase of coal for a year at a fixed price, provided he bought the same amount in summer as in winter ; that if he bought more

in winter, and the market price rose, he was to pay the plaintiff the winter market price for the coal bought in the summer, and that the quantity was to protect the plaintiff against any loss in the difference between the agreed or contract price and the market price of coal; that she asked Rosenfels particularly if she was to be liable for the coal bought by him, and that he told her distinctly that she was not, reiterating the statement that the guaranty was to cover the deal between himself and the plaintiff, with respect to the difference between the winter market price of coal and the price at which the plaintiff agreed to sell him coal during the entire year.

Upon the trial, which was before the court, a jury being waived, the defendant submitted the following written propositions to be held as the law in the decision of the case, all of which were refused, viz.:

1. "That under the evidence in this case, in order to charge the defendant and make her liable as a guarantor or otherwise upon the instrument sued on in this case, it was the duty of the plaintiff to give the defendant notice, within a reasonable time after the receipt of said instrument, that the plaintiff had accepted said instrument or guaranty and was acting under the same, and was carrying on the coal deal mentioned in said instrument with Rosenfels on the strength and faith of said instrument of guaranty.

2. "That if the court finds, from the evidence, that the plaintiff sold Rosenfels coal upon the agreement that he was to pay upon the 15th of each month for all coal sold and delivered to him during the previous month, and finds that said Rosenfels defaulted in making payment, then it was the duty of the plaintiff to give notice to the defendant of such default, and that said plaintiff had no right to continue selling and delivering coal to said Rosenfels after such default without the consent of the defendant.

3. "That it was the duty of the plaintiff to give notice from time to time to the defendant of the amount of coal that the plaintiff was selling and delivering to said Rosenfels upon the strength of said alleged guaranty."

The court thereupon found the issues for the plaintiff, and assessed its damages at $1,383.50, for which sum and costs the court, after overruling the defendant's motion for a new trial, gave judgment for the plaintiff.

The only question we need consider is, whether the defendant can be held liable on her guaranty, in the absence of notice from the plaintiff that it accepted such guaranty and was acting under it. In solving this question it is important to determine the precise meaning and scope of the instrument, and the nature and extent of the liability on the part of Rosenfels which the defendant undertook to guarantee. The undertaking was to guarantee the plaintiff against loss upon its "coal deal" with Rosenfels. The language employed, as must be admitted, is not altogether clear and unambiguous; and the nature of the liability which the guaranty was intended to cover is not so stated as to render it possible to apply the instrument to its subject-matter without the aid of extrinsic evidence. Turning to the evidence, we find, not a contract between the plaintiff and Rosenfels for the sale and delivery of coal, but a mere course of dealings in which Rosenfels was purchasing coal of the plaintiff at such times and in such quantities as he saw fit, with no contract obligation on the part of either to continue such dealings except at pleasure. Shortly before the execution of the guaranty, the plaintiff became dissatisfied on account of Rosenfels' want of promptness in making his payments, and elected, as it had a right to do, to discontinue selling him coal. Rosenfels then obtained from the defendant said guaranty, and on the strength of that security the parties resumed their dealings upon the same footing as before. These dealings, which were thus interrupted and which were to be resumed on the giving of the guaranty, were the only dealings then pending between the parties, or which could have been in their contemplation at the time that instrument was executed. The conclusion, then, is irresistible, that by the term "coal deal" was meant the course of dealings in coal which the plaintiff and Rosenfels contemplated resuming and carrying on in the future in case satisfactory security should be furnished. But neither the amount of coal

to be purchased nor the time during which the contemplated dealings were to continue was in any way fixed or limited. There was no contract by which the plaintiff was bound to sell or Rosenfels to purchase a pound of coal. They were at liberty to deal with each other as little or as much and as long as they chose, there being no limit imposed upon their transactions, either in point of duration or amount. It is clear, then, that the instrument in question was a continuing guaranty of a future indebtedness, wholly uncertain and unlimited in amount and growing out of a series of transactions to be continued for an indefinite period of time.

The rule clearly deducible from the general current of authority is, that a guaranty of this character can not be held to be binding on the guarantor, unless he is notified within a reasonable time that the party guaranteed has accepted the guaranty and is acting under it. We can refer here only to a few of the numerous decisions of the American courts sustaining this proposition. Thus in Mussey v. Rayner, 22 Pick. 223, it is said: "The general rule of law on this subject seems now to be well settled, requiring that in cases of a written guaranty for a debt yet to be created and uncertain in its amount, the guarantor should have notice, in a reasonable time, that the guaranty is accepted, and that credit has been given on the faith of it." This rule was applied in Allen v. Pike, 3 Cush. 238, where the defendant signed a writing addressed to the plaintiff and another, declaring that he made himself liable for whatever amount a certain third person might become indebted to either of them. No notice of the acceptance of the guaranty having been given within a reasonable time, it was held not to be binding on the guarantor. In that case the court say: "The distinction is between an offer to guarantee a debt about to be created, the amount of which the party making the offer does not know, and it is uncertain whether the offer will be accepted so that he may be ultimately liable, and the case of an absolute guaranty, the terms of which are definite as to its amount and extent. In the latter case, no notice is necessary to the guarantor; whereas, in the former case, the contract is not completed until the offer is accepted."

In Babcock v. Bryant, 12 Pick. 133, the defendant gave the plaintiff a writing by which he agreed to be responsible and pay him for whatever goods had been or might be delivered to one Case. Certain goods were delivered by the plaintiff to the party named, and a considerable time afterward suit was brought against the defendant on his guaranty, no notice that the plaintiff had been acting thereon having been given to the defendant; and it was held, upon the principle above stated, that he was not liable. In Norton et al. v. Eastman, 4 Greenl. 521, the defendant addressed a letter to the plaintiffs recommending one Farrington as of good credit up to a specified amount, and agreeing, in case the plaintiffs should trust him for that amount, to be accountable to them therefor in case of Farrington's failure to make payment. Suit being brought to enforce the guaranty, the same rule was applied, the court, however, in its opinion, recognizing the rule that when a guaranty is absolute in its terms, and definite as to its amount and extent, no notice to the guarantor is necessary, as the very act of giving the guaranty carries with it notice of its nature and limits. In Tuckerman v. French, 7 Greenl. 115, it was held that notice was necessary, where the plaintiffs sold one Prescott certain goods on a letter signed by the defendant, by which the latter agreed to hold himself responsible for any goods the plaintiffs might sell said Prescotts up to $500.

In Douglas v. Reynolds, 7 Pet. 113, Mr. Justice Story, discussing the reasonableness of the rule, says: "A party giving a letter of guaranty has a right to know whether it is accepted, and whether the person to whom it is addressed means to give credit on the faith of it, or not. It may be most material, not only as to his responsibility, but as to his future rights and proceedings. It may regulate in a great measure his course of conduct, and his exercise of vigilance in regard to the party in whose service it is given. Especially is it important in case of a continuing guaranty, since it may guide his judgment in recalling or suspending it." So, in Edmonston v. Drake, 5 Pet. 634, Mr. Chief Justice Marshall, in discussing the rule, says: "It would indeed be an extraordinary departure from that exactness and precision which peculiarly dis-

tinguish commercial transactions, which is an important principle in the law and usage of merchants, if a merchant should act on a letter of credit of this character, and hold the writer responsible without giving notice that he had acted on it." In Adams v. Long, 12 Pet. 207, the only question presented was, whether, upon a letter of guaranty addressed to a particular person, or to persons generally, for a future credit to be given to the party in whose favor the guaranty is drawn, notice is necessary to be given to the guarantor, that the person giving the credit has accepted or acted on the guaranty, and given credit on the faith of it; and Mr. Justice Story, delivering the unanimous opinion of the court says : " We are all of the opinion that it is necessary ; and that it is not an open question in this court. It is in itself a reasonable rule, enabling the guarantor to know the nature and extent of his liability, to exercise due vigilance in guarding himself against losses which might otherwise be unknown to him, and to avail himself of the appropriate means, in law and equity, to compel the other parties to discharge him from future responsibility."

Of the other cases, sustaining substantially the same doctrine, the following may be noted: Lawton v. Maner, 9 Rich. Law, 335; Kellogg v. Stockton, 29 Penn. St. 460; Unangst v. Heller, 26 Id. 150; Kay v. Allen, 9 Id. 320; Kincheloe v. Holmes, 7 B. Mon. 5; Sollee v. Meugy, 1 Bailey Law, 620; McCollum v. Cushing, 22 Ark. 540; Oakes v. Willer, 13 Vt. 106; Peck v. Barney, Id. 93; Howe v. Nichols, 22 Maine, 175; Thompson v. Glover, 78 Ky. 193; Taylor v. Shouse, 73 Mo. 361; Central Savings Bank v. Shine, 48 Id. 456; Rankin v. Childs, 9 Id. 665. See also, Brandt on Suretyship and Guaranty, Sec. 157 *et seq.*, where the authorities on this question are collected and discussed. In New York the contrary doctrine seems to be held. Whitney v. Groot, 22 Wend. 82 ; Smith v. Dann, 6 Hill, 543; City National Bank v. Phelps, 86 N. Y. 484. It is plain, however, that the courts of New York are not in harmony with the current of authority on this question.

Many of the foregoing decisions proceed upon the princi-

ple that where the guaranty relates to a future indebtedness, uncertain in amount, the transaction is in effect only an offer to guarantee, and that it has only the force of an offer until the party making the guaranty is notified of its acceptance. It can not be doubted that in the present case there was no binding contract between the plaintiff and defendant, until the plaintiff had acted on the guaranty by selling and delivering coal to Rosenfels in reliance upon it. Until that was done neither party was bound. The plaintiff was under no contract which bound it to sell coal to Rosenfels, and notwithstanding the proposed guaranty, it was at liberty to sell to him or not, as it saw fit. The plaintiff was not bound to act upon the guaranty, and there was no certainty that it would ever do so. The guaranty could have no vitality until the creation of a debt to which it could apply, and that was a matter wholly within the discretion of the plaintiff. It is also obvious, upon the same principles, that until the creation of some portion of the indebtedness, proposed to be guaranteed, the defendant was at liberty to treat the guaranty as a mere offer and withdraw it as not having been accepted. The transaction then being a mere offer, before it could be transformed into a consummated contract, it was necessary that there should be an acceptance, and that such acceptance should be communicated to the other party. Until that was done there could not be said to be that meeting of the minds of the parties which is always necessary to the formation of a valid contract.

There is a class of cases, as we have seen, where the offer and acceptance are cotemporaneous. To this class belong those cases where the guaranty is absolute in its terms and definite as to its amount and extent. There are also cases where notice of the acceptance may be constructive, or where it may be inferred from the circumstances of the case. Here, however, no such notice can be inferred. The plaintiff and defendant were strangers and had no communications with each other. All the defendant is shown to have known of the plaintiff, or of its business, or of its relations with Rosenfels, was derived from the communication made to her by

Newman v. Streator Coal Co.

Rosenfels at the time she signed the guaranty. Much that he then told her is shown by the evidence to have been a pure fiction. The facts as represented did not exist. No such contract as that stated by Rosenfels was pending or in contemplation. It is impossible to infer notice of the plaintiff's acceptance of the defendant's offer from Rosenfels' misrepresentations.

But even if he had told her the truth, he was acting for himself, and not for the plaintiff. It is doubtful whether he was not incapacitated to act as the plaintiff's agent, and it is certain that he did not assume so to act. He had no authority to accept the guaranty on behalf of the plaintiff, or to communicate to the defendant the plaintiff's acceptance; nor did he assume to make any such communication. He did not tell her that she had already been suggested to the plaintiff as guarantor, and that the plaintiff, after investigating her circumstances, had declared itself satisfied with her responsibility; nor did he tell her that the guaranty itself was dictated or drawn up by the plaintiff's secretary. Nothing was said to her indicating that a guaranty from her had been suggested to or considered by the plaintiff, or that an acceptance of her responsibility by the plaintiff had been determined upon, or was probable. It thus appears that the evidence in relation to the execution of the guaranty entirely fails to present any circumstances from which notice of the acceptance of the guaranty can be inferred.

There being no evidence of notice to the defendant that the plaintiff had accepted her guaranty and was dealing with Rosenfels on the faith of it, her liability on the guaranty was not established, and the court erred in finding the issues for the plaintiff. The court also erred in refusing to hold, as a matter of law, that such notice was necessary. For these errors the judgment will be reversed and the cause remanded.

Judgment reversed.